**In the Interest of Zabette Rene STRIEGLER.**

No. 07–95–0239–CV.

Court of Appeals of Texas, Amarillo.

Feb. 1, 1996.

Rehearing Overruled Feb. 28, 1996.

Barbara D. Campanelli, Lubbock, for appellant.

Purdom Law Offices (Thomas J. Purdom), Lubbock, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

BOYD, Justice.

In twelve points of asserted error, appellant Allan Ayers Striegler (Allan) challenges a trial court order finding him to be $23,-899.24 delinquent in the payment of child support to Saundra Lou Striegler Ford (Saundra). For reasons we later discuss, we affirm the judgment of the trial court.

In his first six points, Allan argues the trial court erred in 1) failing to file findings of fact and conclusions of law in accordance with § 14.057(a) of the Texas Family Code; 2) failing to make a proper determination of his net resources in accordance with Texas Family Code § 14.053 because it improperly failed to reduce them by the amount of his long-term mortgage payment on income producing real property; 3) finding there had been no change in the status of the child's property since rendition of the order and that the circumstances of no one affected by the order had materially and substantially changed to justify a decrease; 4) finding he was not entitled to a retroactive decrease in child support because the evidence was both legally and factually insufficient to support that finding; 5) finding the amount of child support was in substantial compliance with statutory child support guidelines; and 6) finding he did not allege any affirmative defenses pursuant to § 14.40(g) of the Texas Family Code.

In his last six points, Allan avers the trial court erred in 7) finding he intentionally engaged in farming and resort activities knowing they would not produce income when he could have been gainfully employed elsewhere; 8) & 9) finding he failed to pay child support on January 1 and January 15, 1989 because the doctrine of collateral estoppel barred relitigation of that issue, and the evidence was legally and factually insufficient to support that finding; 10) finding him delinquent in payment of child support in the amount of $17,950 because there is no evidence to support that finding; 11) making the finding that he owed $5,949.24 of accrued interest, because there was no evidence to support the finding, and 12) allowing appellee's attorney to testify concerning attorney's fees, and awarding attorney fees based upon

that testimony. The nature of Allan's challenge requires us to review the relevant history of the case and the evidence produced at trial in some detail.

## HISTORY

Zabette Rene Striegler was born to the marriage of Allan and Saundra on February 24, 1976. The marriage was dissolved on October 12, 1976, and, on January 17, 1986, by an agreed order, Allan's child support obligation was increased to $650 payable in equal installments on the first and fifteenth of each month. In September of 1988, Allan filed a motion to decrease the child support. Saundra replied by seeking an increase in support. After various hearings, one of which resulted in an order increasing child support reversed by this court, the trial court entered its order on March 23, 1995, finding Allan to be delinquent in child support in the amount of $23,899.24, finding him to be in contempt of court, ordering his confinement, awarding interest on the delinquency, and awarding attorney fees of $10,281.25 to Saundra. Hence, this appeal.

## EVIDENCE

In support of his position that his finances and circumstances had substantially changed to his detriment, Allan presented extensive testimony about how the value of the property he owned at the time of the prior order had declined. He averred that most of his income is from mineral royalties with smaller amounts of income from grass and hunting leases. For example, he testified, in January 1986 he owned a 2,000 acre tract of land in Sutton County which, at the time, was worth $400 per acre and was encumbered with a mortgage he described as amounting to $280,000 "in principal." From the land, he received royalty income that was "as high as over a hundred thousand a year in the '80's to—and it varies from month to month and year to year. My last check was $2,800 for a month."

In 1985–86, Allan also had somewhat unprofitable investments and sole proprietorships including a commercial fishing enterprise, an oil lease in San Antonio, a "lease" in

Kentucky, and a farming and ranching operation. He also had bank accounts, "some CD's," and was trying to put money in an I.R.A. At that time, he had a 1983 Oldsmobile, a 1980 Dodge pickup, and a 1986 Chevrolet pickup that belonged to the "corporation" that he claims he still owns today.

At different times, Allan owned property in Eastland and Stephenville, as well as various undivided interests in land in Stephens, Hood, and Comanche counties. He sold several of these interests to acquire, finance and operate an entity known as Thurber Lake Resort. He then used royalty payments and proceeds from Thurber Lake Resort installment land sales to make mortgage payments on the "Sonora Property" in Sutton County.

It is Allan's contention that since 1986, his royalty income has dropped drastically, which has affected his ability to make mortgage, property tax, and child support payments. He testified that to make his payments, he did "[w]hatever it took. Whether I had to sell cattle or sell farm equipment, or use savings. Try to sell some land or borrow it if I needed to." He averred that all offers to buy his land have been "unacceptable," except an offer to buy a 35–acre tract he sold 2–3 years ago.

According to Allan, around January 1, 1989, he became involved in the Thurber Lake Resort to help make payments on the Sonora Land. He traded the ranch in Erath County, assumed a note, and, using his Eastland ranch as collateral, borrowed approximately $160,000. When the Thurber Lake project made no money, he deeded the property to the Thurber Lake Resort, Inc., a corporation owned by his brother John Striegler.[1] What next ensued was a series of complex transactions which resulted in various properties being owned by the Thurber Lake Resort, Inc., the Thurber Lake Private Resort, Inc. (his corporation), and the A.B. Culbertson Company, trustee for John Striegler's I.R.A. account.

To rebut allegations that his circumstances had not materially and substantially changed since entry of the agreed judgment, Allan

---

1. Except for lots which had been sold to Thurber Lake Private Resort, owned by Allan.

offered evidence that he has not bought any new cars, art, jewelry, or similar items since 1986. He said that because of financial stress, his standard of living has decreased and that he paid $300 a month child support beginning in September or October of 1990. When Zabette turned 18 in February 1994, he continued to pay $300 per month until she finished high school, at which time he paid $1,000. He testified that from 1990–1994, he borrowed money from his brother to make payments on the Sonora property and still owed the "majority" of that money he borrowed.

Upon cross-examination, testimony was elicited from Allan that although he asserted he borrowed money from his brother to pay on the Sonora property, there was no deed of trust evidencing any such indebtedness. In fact, a review of the county records would indicate Allan owned the property "free and clear." With respect to the Thurber Lake investment, Allan admitted that although he knew it had been a loser, he was still hopeful and was staying involved in it to avoid a class action law suit. When queried about how he spent his days, he admitted that although it varied from day to day, most of his time was spent at the resort. In the course of a long explanation of how much he owed various lenders, he admitted that in 1989, while his motion to decrease his child support payments was pending, he invested $160,000 in the Thurber Lake Resort.

## SAUNDRA'S TESTIMONY

Saundra's salary increased from $29,420 in 1986–87 to $37,300 in 1993–94. After the child support increase ordered in 1986, she spent $13,478 on a car and $69,888 on the house in which she resides. She admitted that from 1986 to 1989, all of Zabette's needs were being met, and, in November 1986, she began investing $100 per month in savings bonds. She remarried in 1988 but in 1990, her husband died. As a result of his death, she received approximately $400,000, part of which she used to pay for her residence. As

a result of her stepfather's death, Zabette also began receiving social security payments of approximately $380 per month. Saundra then made a series of purchases including a hot tub, a car,[2] a bedroom suite for Zabette, a sprinkler system, a country club membership, a horse, jewelry, and an alarm system. She also made several trips, including a cruise and a trip to Europe for herself and Zabette. She said that even though Allan had failed to pay child support, she was able to do these things because of the money she received at her husband's death. She also said Zabette was attending Texas Christian University.

Reiterated, in his first point, appellant complains the trial court failed to file findings of fact and conclusions of law and, as a result of this failure, he cannot ascertain the basis for the trial court judgment. The record reveals that after appellant requested findings of fact and conclusions of law, the trial judge signed a 28–page order detailing the dates and amounts of appellant's delinquent child support, the punishment assessed, the reduction to money judgment, and attorney fees awarded. Allan then made a "Request for Additional and Amended Findings of Facts and Conclusions of Law" suggesting several specific changes in the findings and conclusions. In response, the trial court entered an instrument expressly entitled "Findings of Fact and Conclusions of Law."

The gist of Allan's complaint is that none of the instruments executed by the trial court contain findings sufficiently specific to satisfy the mandatory requirements of § 14.057.[3] That failure, he posits, requires reversal. Section 14.057 reads as follows:

a) Without regard to Rules 296 through 299, Texas Rules of Civil Procedure, in any suit affecting the parent-child relationship . . . in which child support is contested and the amount of the support is set or modified by the court, on written request made or filed with the court not later than 10 days after the date of hearing or an oral

---

2. She testified she traded in two cars to buy this automobile, and had no outstanding loan on it.

3. This and all references to section numbers are to the Texas Family Code as it read at the time of the trial on the merits, unless otherwise specified.

request made in open court during the hearing, the court shall state the following in the child support order:

(1) the amount of net resources available to the obligor per month is $———.

(2) the amount of net resources available to the obligee per month is $———.

(3) the amount of child support payments per month that is computed if Section 14.055, Family Code, is applied is $———.

(4) the percentage applied to the obligor's net resources for child support by the actual order rendered by the court is ———%; and, if applicable,

(5) the specific reasons that the amount of support per month ordered by the court varies from the amount computed by applying the percentage guidelines pursuant to Section 14.055, Family Code, are: ———.

Tex.Fam.Code Ann. § 14.057 (Vernon Supp. 1995).

■ By its terms, the statute requires the iterated findings in contested hearings in which "the amount of support is set or modified by the court." In this case, although Allan was seeking a reduction and, at one time, Saundra was seeking an increase, the trial court neither "set" or "modified" the child support, but rather, found Allan in contempt for not paying existing child support arrearages, reduced the arrearage to a money judgment in the amount of $17,950, assessed accrued interest at $5,949.24, and awarded attorney fees. We decline to extend the requirements of § 14.057 to orders which deny motions to modify child support and, effectively, order payment of child support as set out in a prior order. *See MacCallum v. MacCallum*, 801 S.W.2d 579, 584–85 (Tex. App.—Corpus Christi 1990, writ denied).

Allan also asserts "both the reviewing court and the denied party are required to speculate as to the facts and grounds used by the trial court in reaching its decision," and concludes that "appellant's only remedy is to appeal the decision since he is unable to make a proper assessment of the decision

and the rationale underlying it." We disagree.

■ Because this action is not governed by the provisions of § 14.057, to determine if the trial court's failure to address Allan's specific requests for additions and amendments to the findings of fact and conclusions of law requires reversal, we look to Rule 296–98 of the Texas Rules of Civil Procedure.[4] Additional findings of fact and conclusions of law are only required if they are necessary to determine ultimate or controlling issues. Tex.R.Civ.P. 298; *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 550 (Tex.App.—Houston [1st Dist.] 1994, no writ); *Dura–Stilts Co. v. Zachry*, 697 S.W.2d 658, 661 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Additional findings are not required if they conflict with the original findings and conclusions made and filed by the trial judge, *Garcia v. Ramos*, 546 S.W.2d 400, 403 (Tex.Civ.App.—Corpus Christi 1977, no writ), nor does the refusal to make such findings require reversal if the record affirmatively shows no injury. *Boudreaux Civic Ass'n*, 882 S.W.2d at 550, *citing Strickland v. Coleman*, 824 S.W.2d 188, 193 (Tex.App.—Houston [1st Dist.] 1991, no writ).

As relevant here, § 14.08 provides a court may modify an order or decree "if the circumstances of the child or a person affected by the order or portion of the decree to be modified have materially and substantially changed since the date of its rendition."

■ The person seeking a modification has the burden to show the requisite change in circumstances has occurred since the entry of the most recent order. *State v. Hernandez*, 802 S.W.2d 894, 895 (Tex.App.—San Antonio 1991, no writ). In ruling upon a modification application, a court must compare the financial circumstances of the child and the affected parties at the time the support order was entered with their circumstances at the time modification is sought. *Id.* In addition, a court must remember the best interest of the child is the primary concern in matters of

---

4. Saundra contends Allan's original request for findings of fact and conclusions of law was not timely filed. Because we decide the question is governed by Rule 296 and the original request was filed within 11 days after the date of the letter containing the court's decision, it was timely filed.

child support. Tex.Fam.Code Ann. § 14.07(a) (Vernon Supp.1995).

In this case, in a somewhat lengthy dissertation, the trial court set out its support and rationale for its decision. In findings of fact filed after Allan made his "Request for Additional and Amended Findings of Fact and Conclusions of Law," *inter alia,* the trial court expressly found:

9. There has been no change in the status of the child's property since rendition of the order sought to be modified.

10. The circumstances of neither the child nor any person affected by the order for the support of the child have materially and substantially changed since January 17, 1986, to justify a decrease in child support.

■ The findings made by the court are those relating to the ultimate and controlling issues in the case. Many of Allan's other requests were either contradictory to the court's previous findings or were merely evidentiary. We find nothing incident to the trial court's failure to make particular findings prevented an adequate presentation of any matter Allan contends in this appeal. *See Huber v. Buder,* 434 S.W.2d 177, 181 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.). Appellant's first point is overruled.

In his second point, appellant contends the trial court erred in failing to reduce his net resources by the amount of his long-term mortgage payments on income-producing real property. That error, he reasons, resulted in the trial court's misapplication of the child support guidelines and an improper determination of his net resources under § 14.053(b).

Net Resources are defined in § 14.053(b) as:

Net Resources Defined. "Net resources," for the purpose of determining child support liability, are 100 percent of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, and bonuses), interest, dividends, royalty income, self-employment income (as described in Subsection (c) of this section), net rental income (defined as rent after deducting operating expenses and mortgage payments, but not including noncash items such as depreciation), and all other income actually being received, including but not limited to severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits, unemployment benefits, disability and workers' compensation benefits, interest income from notes but not including return of principal or capital, accounts receivable regardless of the source, gifts and prizes, spousal maintenance, and alimony, less (subtracting) 100 percent of social security taxes, federal income tax withholding for a single person claiming one personal exemption and the standard deduction, union dues, and expenses for health insurance coverage for the obligor's child. Benefits paid pursuant to aid for families with dependant children and any other child support received from any source shall be disregarded in calculating net resources.

Tex.Fam.Code Ann. § 14.053(b) (Vernon Supp.1995).

In § 14.053(c), self employment income is addressed as:

Income from self-employment, whether positive or negative, includes benefits allocated to an individual from a business or undertaking in the form of a proprietorship, partnership, joint venture, close corporation, agency, or independent contractor, less ordinary and necessary expenses required to produce that income, but may exclude amounts allowable under federal income tax law as depreciation, tax credits, or any other business expenses shown by the evidence to be inappropriate to the determination of income for the purpose of calculating support.

Tex.Fam.Code Ann. § 14.053(c) (Vernon Supp.1995).

In § 14.053(e), it is provided:

The court may consider any additional factors that increase or decrease the ability of the obligor to make child support payments. When appropriate, in order to determine the "net resources" available for child support the court may assign a reasonable amount of "income" attributable to

assets that do not currently produce income. However, the court shall consider whether certain nonincome-producing property can be liquidated without an unreasonable financial sacrifice because of cyclical or other market conditions. If there is not an effective market for the property, the carrying costs of such an investment, including property taxes and note payments, shall be offset against the income attributed to the property. The court may also assign a reasonable amount of "income" to income-producing assets that have been voluntarily transferred or reduced in earnings with the effect of reducing the net resources of the party. As used in this section, "property" and "assets" include both real and personal property and assets, including a business and investments.

Tex.Fam.Code Ann. § 14.053(e) (Vernon Supp.1995).

The evidence shows that Allan has a business degree from Tarleton State College. He has made a living with farming and ranching activities, oil and gas royalties, and various commercial investments. As we have noted, he asserts his primary source of income was oil and gas royalties from the Sonora property which is encumbered with a twenty-year mortgage.

Both parties introduced into evidence their version of Allan's net worth which differ only in Allan's deduction of the note payments from the Sonora property. In supporting his argument that the mortgage payments should be deducted in determining his net resources, Allan argues that §§ 14.053(b), (c), and (e) are applicable in that they describe analogous situations in which (1) net rental income is defined as rent after deducting operating expenses and mortgage payments, (2) ordinary and necessary expenses required to produce self employment income are deductible, and (3) if there is not an effective market for non-income producing property, the carrying costs of such an investment, including property taxes and note payments should be offset against income from the property. While he cites no case authority supporting his position, Allan posits the reasoning allowing such deductions should also be applied here.

In assessing the action of the trial court, we must bear in mind that the setting of child support by a trial court should only be set aside on a finding of clear abuse of discretion. *Stocker v. Magera*, 807 S.W.2d 753, 754 (Tex.App.—Texarkana 1990, writ denied), *citing Gillespie v. Gillespie*, 644 S.W.2d 449 (Tex.1982). In deciding whether a trial court has abused its discretion, we must determine whether the court acted without reference to any guiding rules and principles, *i.e.*, arbitrarily or unreasonably. In making that determination, we must bear in mind that the mere fact that a trial judge may decide a matter within his discretion in a manner different than an appellate judge does not demonstrate that the trial judge abused his discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

In his findings of fact, the trial court recognized that in addition to the Sonora property in Sutton County, Allan owned substantial amounts of land in Eastland, Erath and Hood counties. He also found Allan "possessed property which could have been sold, mortgaged or otherwise pledged to raise funds to pay the support, made no attempt to borrow the funds and had other sources from which the money could have been borrowed or otherwise legally obtained." Other findings included a determination that Allan intentionally engaged in certain farming and resort operations, knowing they would not produce income. The trial court also found the $650 per month was in substantial compliance with child support guidelines and that "[I]f anything, the guidelines justify an increase."

In his testimony, in addition to admitting he owned property in the counties we have listed above, appellant admitted he owned property in Stephens and Comanche counties. He also admitted to selling part of the Sonora property to make payments on other properties, and, at one time, borrowing money to pay child support.

On cross-examination, Allan said he was current in his bank payments and that the

only people he was "behind on payments to" were his brother and his ex-wife. When questioned about the value of all his property, he agreed there was approximately "750,-000 equity." As Saundra's counsel finished his cross-examination, the record shows the following colloquy:

Mr. Purdom: You are telling the court here that a man who has somewhere around $750,000 in property, can't pay his child support as ordered by the court, is that right?

Allan Striegler: Yes.

Mr. Purdom: You've got property that you could sell and pay $29,000.00, don't you?

Allan Striegler: Yes.

It is the rule that the duty to support one's child is not limited to a parent's ability to pay from current earnings but also extends to his or her financial ability to pay from any and all sources that might be available. *Powell v. Powell,* 721 S.W.2d 394, 396 (Tex.App.—Corpus Christi 1986, no writ), citing *Pharo v. Trice,* 711 S.W.2d 282, 284 (Tex.App.—Dallas 1986, no writ). A court may also take a parent's earning potential into account in determining a proper amount of child support. *Matter of Marriage of Miller,* 600 S.W.2d 386, 389 (Tex.Civ. App.—Amarillo 1980, no writ). A parent who is qualified to obtain gainful employment cannot avoid his or her support obligations by voluntarily remaining unemployed, and a court's order must always be for the best interest of the children. *Powell v. Powell,* 721 S.W.2d at 396.

While § 14.053(b) does not expressly allow reduction of an obligor's net resources by long-term mortgage payments on income producing real property, and Allan does not produce relevant authority to buttress his contention he should have been credited with those payments, we do note that paragraph (c) of that section allows an obligor to deduct ordinary and necessary expenses from self-employment income. However, we do not need to consider its applicability to Allan's capital investments. Considering Allan's overall financial resources, his earning potential, the latitude given the trial judge by the "additional factors" provision of the statute,

and the standard by which we review the trial court's decision, we find that court did not abuse its discretion in making that decision. Allan's second point is overruled.

Allan addresses points three through six jointly. In those points, he contends the evidence is legally and/or factually insufficient (3) to support the trial court's finding that the child's property status had not changed nor had the circumstances of the child or any other person materially changed since January 17, 1986; (4) to support its finding that no retroactive decrease was justified; and (5) to support its finding that the existing amount of child support complied with §§ 14.052 and 14.053. In point of error six, he contends the trial court erred in concluding that Allan had not alleged any affirmative defenses pursuant to § 14.40(g).

Findings of fact have the same force and dignity as a jury's verdict, *Hydrocarbon Mgt. v. Tracker Exploration,* 861 S.W.2d 427, 431 (Tex.App.—Amarillo 1993, no writ), and, like a jury verdict, are subject to legal and factual insufficiency challenges where there is a complete statement of facts in the record. *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

In reviewing a no evidence or legal insufficiency attack, we must examine the record in the light most favorable to the finding to determine if there is any probative evidence, or reasonable inferences therefrom, which support the findings. In doing so, we must disregard all evidence or reasonable inferences therefrom to the contrary. *Raw Hide Oil & Gas v. Maxus Exploration,* 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of probative evidence supporting the finding of the trial court, the point will be overruled. Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 803 (1952).

A factual insufficiency challenge requires us to examine the entire record to determine if there is some probative evidence to support the finding, and if so, whether that evidence is so weak or the answer so

contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Garza v. Alviar,* 395 S.W.2d at 823; *Raw Hide Oil & Gas,* 766 S.W.2d at 276.

■ In considering points three and four, we note the trial court's finding of no change in the child's property since the rendition of the order sought to be modified. Saundra's trial testimony that since her husband's death, Zabette had been receiving social security payments of about $380 per month, is uncontroverted. That being true, the evidence does not support that particular finding. However, even so, and assuming that portion of appellant's third point is well taken, we do not find reversal is required.

In its finding # 10, the trial court found the circumstances of any person affected by the order had not "materially and substantially changed since January 17, 1986, to justify a change in support." A reasonable interpretation of that finding is that no change in the circumstances of any party had occurred sufficient to justify a change in support. Such a conclusion is supported by findings 130–134 in which the court found that Allan had the ability to provide the ordered support but simply failed to do so. Given the facts in this case, viewed in the light in which we must view them, we cannot find the trial court acted arbitrarily or capriciously in its determination that continuation of the 1986 order was in the best interest of the child and that Allan had the resources to make the child support payments. Allan's third and fourth points are overruled.

■ In considering Allan's fifth point evidentiary challenge to the trial court finding that $650 a month in child support substantially complies with Family Code requirements, we must bear in mind the Texas law that each spouse has a duty to support his or her minor children. *Matter of the Marriage of Miller,* 600 S.W.2d at 389, *citing Ondrusek v. Ondrusek,* 561 S.W.2d 236, 237 (Tex.Civ.App.—Tyler 1978, no writ). That obligation corresponds in large measure to the parent's financial ability and earning potential. *Matter of Marriage of Miller,* 600 S.W.2d at 389. The guidelines found in Chapter 14 of the Texas Family Code are intended to guide the courts in determining what is an equitable amount of child support, and the trial court is given broad discretion in assessing child support payments. Tex.Fam.Code Ann. § 14.052(a) (Vernon Supp.1995). Factors the court must be guided by in following or varying from the guidelines are:

(1) the needs of the child;

(2) the ability of the parents to contribute to the support of the child;

(3) any financial resources available for the support of the child; and

(4) the amount of possession of and access to a child.

Tex.Fam.Code Ann. § 14.052(b) (Vernon Supp.1995).

■ In the course of his testimony, Allan admitted he had property he could sell to pay $29,000 in child support. He also admitted that while his modification motion was pending before the trial court, he obtained a $160,000 loan for business purposes. While he offered evidence that he was not able to purchase certain items, he failed to produce evidence that he was being denied necessary living expenses. Under the record, the trial court did not abuse its discretion in entering its order. Allan's fifth point is overruled.

In advancing his sixth point contention that the trial court erred in concluding he did not allege an affirmative defense, Allan does not claim he suffered any harm and does not support the point with citation of any authority. Because he has failed to present any authority supporting the point, any error is waived. Tex.R.App.P. 74(f); *Tobias v. University of Texas,* 824 S.W.2d 201, 207 (Tex.Civ.App.—Fort Worth 1991, writ denied), *cert. denied,* 506 U.S. 1049, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993). Appellant's sixth point of error is overruled.

■ In his seventh point, Allan challenges the legal and factual sufficiency of the evidence to sustain the court's finding that he "intentionally engaged in his farming operation and the resort knowing they would not produce income, when he could have been gainfully employed elsewhere." Section 14.053 permits a finding that an obligor is

intentionally underemployed. If such a finding is made, the court can assess child support based on earning potential. *Starck v. Nelson*, 878 S.W.2d 302 (Tex.App.—Corpus Christi 1994, no writ). In arriving at that conclusion, the *Starck* court cited *LeBlanc v. LeBlanc*, 761 S.W.2d 450, 454 (Tex.App.—Corpus Christi 1988), *writ denied per curiam*, 778 S.W.2d 865 (Tex.1989) for the proposition that "intentional underemployment" requires a voluntary choice by the obligor.

■ In this case, viewed in the light in which we must view it, there is evidence upon which the trial court could reasonably have concluded that Allan was "intentionally underemployed" by engaging in investments and enterprises that provided an illusion of decreased income, thereby providing a justification for decreasing his child support. Allan's seventh point of error is overruled.

In his eighth and ninth points of error, Allan complains of the trial court findings regarding his failure to pay child support on the specific dates of January 1, 1989, and January 15, 1989, his failure to pay child support for the rest of that year, and the resultant findings of contempt. He makes alternative claims that the findings were barred by collateral estoppel or were supported by no evidence. In his tenth and eleventh points he contends there was no evidence to support the trial court findings that the amount of delinquent child support is $17,950, and the interest thereon is $5,949.24.

■ The doctrine of collateral estoppel is considered to be a form of *res judicata*, a generic term for a group of related concepts concerning the effects given final judgments. Within the general doctrine of *res judicata*, there are two general categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). *Barr v. Resolution Trust*, 837 S.W.2d 627, 628 (Tex.1992), *citing Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 679 (Tex. 1982). Res judicata or collateral estoppel is an affirmative defense which must be pled or be waived. Tex.R.Civ.P. 94. There is no pleading in this record raising that defense. That being so, Allan has failed to preserve for appellate review any challenge on that basis.

We must now address Allan's contention there was no evidence to support the trial court's finding that he failed to pay child support payments prior to January 1990.

■ Saundra introduced into evidence a chart listing the amounts of child support paid, child support arrearages, and interest accrued from January 1, 1989, to January 1995. The amount shown due on that exhibit was $19,900. It is the classic province of the trier of fact to pass upon the credibility of evidence introduced before it and to accept all, part, or none of it. In its exercise of this function and acting as the trier of fact, the trial court found the amount of arrearages to be $17,950. Under this record, the evidence is sufficient to support the trial court's holding. Allan's points eight through eleven are overruled.

In his twelfth and final point, Allan argues the trial court erred in allowing Saundra's attorney to testify as to attorney's fees and in subsequently awarding those fees because "[a]ppellee failed to answer and/or properly supplement proper discovery requests and such admission of testimony and evidence should have been precluded."

■ Generally, attorney's fees and expenses are not recoverable unless expressly provided for by contract or by statute. *New Amsterdam Casualty Co. v. Texas Indus. Inc.*, 414 S.W.2d 914, 915 (Tex.1967). In this regard, § 14.33(c) of the Texas Family Code provides:

(c) Obligor to Pay Attorney's Fees and Costs; Exception. If the court finds that an obligor has failed or refused to make child support payments that were past due and owing at the time of the filing of the enforcement proceeding, the court shall order the obligor to pay the movant's reasonable attorney's fees and all court costs in addition to any other amounts past due, unless the court makes a specific finding that the attorney's fees and costs need not be paid by the obligor and states the reasons supporting that finding.

mit

Tex.Fam.Code Ann. § 14.33(c) (Vernon Supp. 1995).

Section 14.33(c) was added to the Texas Family Code in 1987 to require the court to impose attorney's fees and court costs when it finds that an obligor has failed or refused to pay child support payments, unless there is a specific finding that the respondent need not pay such amounts. *Goudeau v. Marquez*, 830 S.W.2d 681, 682 (Tex.App.—Houston [1st Dist.] 1992, no writ), *citing Gross v. Gross*, 808 S.W.2d 215, 222 (Tex.App.—Houston [14th Dist.] 1991, no writ). In the award of attorney's fees in family matters, the trial courts have wide discretion and their awards may not be reversed by an appellate court unless the trial court's decision was arbitrary and unreasonable. *Id.* at 683, *citing Landry v. Travelers Ins. Co.*, 458 S.W.2d 649, 651 (Tex.1970) and *Marichal v. Marichal*, 768 S.W.2d 383, 385 (Tex.App.—Houston [14th Dist.] 1989, writ denied).

In this case, over Allan's objection that Saundra's attorney had not been listed in the answers to the interrogatories as a potential expert witness,[5] and with the comment by the court that he was "going to permit Mr. Purdom to testify as to the hours that he spent, but [I] will not permit him to testify as an expert with regard to the reasonableness or necessity thereof," Saundra's counsel was allowed to testify as to the number of hours he spent in preparation for the trial. At the conclusion of that testimony, the following colloquy ensued:

MR. PURDOM: ... I offer into evidence Respondent's Exhibit No. 34, which is a compilation off of my computer for the time that I have spent.

MS. CAMPANELLI: Your Honor, I would object to this and the total amount—I mean his rate per hour. We have gone into that. The reason for my objection for Mr. Purdom to testify.

THE COURT: Mr. Purdom, are those rates that you charged?

MR. PURDOM: Yes.

THE COURT: Does the exhibit state what was done for each charge?

MR. PURDOM: It does.

THE COURT: All right. Again, I will admit the document with the understanding that the court is not going to necessarily accept these rates or any opinion as to what the appropriateness is.

We'll admit R–34.

The interrogatory in question reads as follows: "As to each person you expect to call as an expert or opinion witness, including any lay opinion witness, state the following...." Saundra answered this question with "I do not expect at this time to call any expert witness." Although she might have successfully objected to this interrogatory, because she attempted to answer it, she was required to do so fully and to supplement her answers in accordance with the rules. *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911, 914 (Tex.1992). When a party fails to supplement a discovery request, the sanction is the automatic exclusion of the unidentified witness's testimony. *Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669, 671 (Tex.1990); Tex.R.Civ.P. 215(5).[6] However, to properly answer the question presented by this point, it is helpful to analyze the policies and purposes underlying the formulation of the rule.

The cornerstone of discovery is to "seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984). The discovery process furthers two basic goals for litigants. First, discovery provides parties with notice of the evidence that the opposing party intends to present. For example, with regard to witnesses, the discovery process insures that parties can prepare for trial assured that a witness will not be called

---

5. The objection at trial was "I would like to note my objection regarding—because everything that I see, even if it goes to attorney fees at all, it falls under the category of expert witness. So, note my objection to any testimony that Mr. Purdom has to put on."

6. Later references to rule numbers are to those rules contained within the Texas Rules of Civil Procedure unless otherwise specified.

when the opposing party has not previously identified him. *Sharp v. Broadway Nat'l Bank*, 784 S.W.2d at 671. *See West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978) (discovery allows parties the opportunity to obtain the fullest knowledge of issues and facts prior to trial, parties are able to assess their respective positions, thereby facilitating settlements of disputes). *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 395 (Tex.1989).

Second, the discovery process prevents trial by ambush. *Clark v. Trailways, Inc.*, 774 S.W.2d 644, 646 (Tex.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1028 (1990). As our supreme court recently explicated, a trial should be based upon the merits of the parties' claims and defenses, rather than on an advantage obtained by one side through a surprise attack. *Smith v. Southwest Feed Yards*, 835 S.W.2d 89, 90 (Tex. 1992).

A party fails to supplement within the purview of Rule 215(5) when that party fails to comply with the Rule 166b(6)(b) definition of supplementation. That is, a party has "failed to supplement" when that party has failed to give the expert witness's identity, location, or the subject matter about which the expert is expected to testify. It is undisputed in this case that Saundra failed to designate her attorney as a potential expert witness or list her attorney as a "lay opinion witness."

However, Rule 215(5) contains an exception to the automatic exclusion of an unidentified witness's testimony if a trial court finds good cause for admission of the evidence. *See* Rule 215(5); *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d at 395; *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.*, 701 S.W.2d 243, 246 (Tex.1985).[7] The party offering the testimony and seeking the benefit of the exception has the burden of showing good cause for allowing the witness to testify. *Gee v. Liberty*, 765 S.W.2d at 395. The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony, but it has no discretion to admit testimony excluded by the rule without a showing of good cause. *Alvarado*, 830 S.W.2d at 914.

In *Alvarado*, en route to holding that a sufficient showing of good cause had not been made to justify the trial court in admitting testimony, the supreme court stated that lack of surprise,[8] inadvertence of counsel, and the uniqueness of the evidence, "standing alone, are not in themselves good cause" for the admission of the evidence. *Id.* at 915. However, it follows that these factors, taken together or in some combination, would be good cause. *See also Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162 (Tex.1992).

In *Tamez v. Tamez*, 822 S.W.2d 688 (Tex. App.—Corpus Christi 1991, writ denied), in a discussion of the constitutionality of contempt and garnishment as a means to enforce child support orders, the court noted that because public policy imposes an obligation upon parents to support their children, child support payments are not considered a debt, but rather a legal duty. *Id.* at 691. The court commented, "[A]llowances for attorney's fees and costs to enforce this duty are of the same nature as the allowances of support for which they are a neces-

---

7. We note that *Sharp v. Broadway Nat'l Bank* cites these cases for the proposition that the party offering the expert testimony has the burden of showing good cause *for its failure to supplement* (emphasis ours). 784 S.W.2d at 671. However, Rule 215(5) and the before mentioned cases expressly hold that the quest is for good cause *to require admission*. In fact, the court in *Alvarado* seems to use the phrases interchangeably. In one part of the opinion, the court states "[t]he trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony...." 830 S.W.2d at 914. In holding there was no good cause, the court said "Alvarado's tactical decision ... was not good cause for failure to comply with discovery." *Id.* at 916. It is under the "good cause to require admission" standard articulated in Rule 215(5) that we analyze the instant case.

8. The supreme court has previously stated that lack of surprise is not the standard, but may be a factor for the trial court to consider when weighing whether good cause exists for the admission of testimony of an undisclosed witness. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 395 n. 2 (Tex.1989).

sary means of enforcement." *Id.; see also Ex parte Helms,* 152 Tex. 480, 259 S.W.2d 184, 188 (1953), and *Ex parte Wagner,* 905 S.W.2d 799, 803 (Tex.App.—Houston [14th Dist.] 1995, n.w.h.). It is also established that the rules of pleading and practice are not of primary concern in child custody and support cases and the best interest of the child is the primary concern. *Cohen v. Sims,* 830 S.W.2d 285, 288 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

This court has noted that the exclusion of evidence has been determined to be an extreme penalty, akin to striking pleadings. *Smart v. Winslow,* 868 S.W.2d 409, 415 (Tex. App.—Amarillo 1993, no writ). We also noted that such death penalty sanctions should not be used to deny a trial on the merits without first considering whether lesser sanctions are adequate to insure compliance, deterrence and punishment. *Id.* In *Revco, D.S., Inc. v. Cooper,* 873 S.W.2d 391 (Tex. App.—El Paso 1994, no writ), the court commented that the imposition of discovery sanctions should be determined on a case-by-case basis. In explanation, the court commented that in some situations, exclusion of experts may be only an inconvenience, impairing presentation of a party's case but not precluding trial on the merits, but other cases may require such testimony in which case the exclusion of the expert testimony would have a death penalty effect. *Id.* at 397.

■ The rationale of these cases seems to make improper the technical and mechanical application of Tex.R.Civ.P. 215 to the mandatory award of attorney's fees pursuant to the language of Tex.Fam.Code § 14.33(c). If the exclusion of testimony about attorney's fees would make it impossible for the trial court to fulfill that mandatory duty, then the exclusion is the equivalent of the death penalty. In this case, the judge considered and chose to impose a lesser sanction by letting the attorney testify only as to the number of hours he worked, not as to the reasonableness of the fees.

In her response to Allan's motion to modify filed in Lubbock County on December 16, 1988, over six years prior to the January 19, 1995 hearing on the motion, Saundra requested the award of attorney's fees. In view of the circumstances of this case, with the request for attorney's fees made long before trial and in view of the mandatory requirement that attorney's fees be awarded, Allan could reasonably anticipate an award of attorney's fees. When counsel of record requested the award of such fees to him, Allan could also reasonably anticipate the attorney's factual testimony about the amount of time he spent on the case. In receiving the testimony, the trial judge expressly commented he was only receiving the factual testimony about the number of hours the attorney had spent on the case and would not "permit him to testify as an expert with regard to reasonableness or necessity thereof." Under these circumstances, the testimony received could not constitute an ambush or unfair surprise to Allan. In this case, to hold that an inadvertent failure to list an attorney of record as a witness on requested attorney's fees would deprive the trial court of its ability to comply with the law and its ability to fulfill its concomitant duty to enforce the payment of delinquent child support. This is not within the intent of the discovery rules.

Further, in his conclusions and as authority for his award of attorney's fees, as additional authority to Texas Family Code § 14.33(c), the trial court cited Texas Civil Practice & Remedies Code § 38.004,[9] and Texas Rule of Civil Evidence 201.

Section 38.004 is a sequential follow-up to § 38.001, which is a permissive statute containing an exclusive list of claims to which it applies.[10] It provides that the court may

---

9. Tex.Civ.Prac. & Rem.Code Ann. § 38.004 (Vernon 1986).

10. A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

1) rendered services;

2) performed labor;

3) furnished material;

4) freight or express overcharges;

5) lost or damaged freight or express;

6) killed or injured stock;

7) a sworn account; or

8) an oral or written contract.

take judicial notice of the usual and customary attorney's fees and the contents of the file without receiving further evidence. However, it has been held to apply only to claims for attorney's fees under Tex.Civ. Prac. & Rem.Code § 38.001. *Coward v. Gateway Nat'l Bank,* 525 S.W.2d 857, 859 (Tex.1975); *Kaiser v. Northwest Shopping Center, Inc.,* 544 S.W.2d 785, 788 (Tex.Civ. App.—Dallas 1976, no writ).

In a case decided under this statute, even though the statute seems to be permissive under its terms, the appellate court held that in the absence of good cause, the trial court was correct in refusing to consider the testimony of appellee's counsel as expert testimony because of the failure to list him as a potential expert witness in response to interrogatories. *Budd v. Gay,* 846 S.W.2d 521, 524 (Tex.App.—Houston [14th Dist.] 1993, no writ). However, the court went on to hold the trial court properly considered his testimony as to the facts of his representation and properly took judicial notice of usual and customary attorney's fees without receiving further evidence. *Id.* In doing so, even though § 38.001, by its terms, seems to be permissive, the Houston court held "[a] court has the discretion to fix the amount of attorney's fees, but it does not have the discretion in denying attorney's fees if they are proper under § 38.001." *Id. See also Long Trusts v. Atlantic Richfield Co.,* 893 S.W.2d 686, 688 (Tex.App.—Texarkana 1995, no writ). In considering Tex.Rev.Civ.Stat.Ann. art. 2626, the progenitor of the present § 38.001, in *Coward v. Gateway Nat'l Bank* the court held that in a bench trial, the trial Court "may examine the case file and is to make a determination of the amount of attorney's fees even if no other evidence is offered." 525 S.W.2d at 859. *See also Matter of the Estate of Kidd,* 812 S.W.2d 356, 359 (Tex. App.—Amarillo 1991, writ denied); *Ho v. Wolfe,* 688 S.W.2d 693, 697–98 (Tex.App.—Amarillo 1985, no writ). While these authorities deal with a different statute, their reasoning and rationale is persuasive in the question before us.

Rule 201 of the Texas Rules of Civil Evidence is the general "Judicial Notice of Adjudicative Facts" provision. It provides that a judicially noted fact must not be subject to reasonable dispute in that it is 1) generally known within the territorial jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. Tex.R.Civ.Evid. 201(b). Under the rule, a court may take judicial notice whether requested or not. As we have noted, in his conclusions, the trial judge recited he was taking judicial notice under this provision of the Rules of Civil Evidence.

In sum, the trial judge did not abuse his discretion in receiving the attorney's factual testimony, taking judicial notice of the necessity and reasonableness of the attorney's fees awarded, and thereby impliedly finding good cause for its admission. Appellant's twelfth point is overruled.

The judgment of the trial court is affirmed.

REYNOLDS, C.J., dissents.

QUINN, J., concurs.

QUINN, Justice, concurring.

I fully agree with the majority's discussion and resolution of points one through eleven. However, I concur in Justice Boyd's disposition of point twelve, but not the reasoning underlying it.

The objection lodged by Allan Striegler concerned the attorney's ability to testify as an *expert.* Nothing was said of his ability to speak to *facts* as a *fact* witness. Moreover, the trial court expressly restricted him to so testifying. Any comment falling within the realm of opinion, expert or lay, would be ignored, according to the court.

Furthermore, the evidence actually uttered established the existence of an attorney/client relationship between Saundra Lou Striegler Ford and the witness, the number of hours expended by the witness in securing relief for his client, and the hourly rate charged that client. These topics involved items of fact, not expert or lay opinion. In view of the objection uttered and the evidence presented, I conclude that the trial

Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1986).

judge acted appropriately in admitting the testimony.

To the extent that nothing was said regarding the reasonableness of the fees or the absence of evidence indicating that the fees were reasonable, I also conclude that Striegler waived complaint thereto. Neither his point of error nor argument mentions that element or otherwise complains of unreasonableness. And, though we may have to construe points liberally, we may not, sua sponte, raise argument to secure reversal.

REYNOLDS, Chief Justice, dissenting.

I am not convinced that there is any valid support for the award of attorney's fees to Saundra Lou Striegler Ford. As a result, I would sustain Allan Ayers Striegler's twelfth point of error, reform the judgment to eliminate the award of attorney's fees, and affirm the judgment as reformed.

At the time the trial court rendered its judgment, section 14.33(c) of the Texas Family Code Annotated (Vernon Supp.1995) commanded the trial court to "order the obligor to pay the movant's reasonable attorney's fees ... unless the court makes a specific finding that the attorney's fees ... need not be paid." [1] Thus, absent the specific finding, the court is required to order the payment of attorney's fees, *Matter of Marriage of Vogel,* 885 S.W.2d 648, 651 (Tex.App.—Amarillo 1994, writ denied), provided it is evinced the fees are reasonable. *Goudeau v. Marquez,* 830 S.W.2d 681, 682–83 (Tex.App.—Houston [1st Dist.] 1992, no writ).

Historically, the testimony of an attorney as to the reasonableness of attorney's fees has been considered to be the opinion of an expert witness. Conformably, in *Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155, 161 (1945), the court characterized the testimony of a reasonable attorney's fee by two practicing attorneys of long experience as "opinion evidence of expert witnesses." Later, in *Coward v. Gateway Nat. Bank of Beaumont,* 525 S.W.2d 857, 858 (Tex.1975),

the court viewed the testimony of a reasonable attorney's fee by a member of the State Bar of Texas, engaged in private practice with a familiarity of fees charged in the type of litigation before the court, as an "expression of opinion by an expert witness." Similarly, in *Burleson v. Morse,* 172 S.W.2d 361, 365 (Tex.Civ.App.—Galveston 1943, writ ref'd w.o.m.), the court held that attorneys, who were shown to be specialists in the area of law at issue, were qualified to give their opinions as experts on the subject of a reasonable attorney's fee.

Against this backdrop, Saundra pleaded for the recovery of reasonable attorney's fees. To support the pleading, her attorney, Thomas J. Purdom, whom I judicially notice is certified in Family Law by the Texas Board of Legal Specialization, proposed to testify "on attorney fees." Allan objected, and pointed out that in answer to interrogatories requesting the designation of "each person you expect to call as an expert or opinion witness including any lay opinion witness," Saundra answered, "I do not expect at this time to call any expert witness," and the answer was never supplemented. To the objection, Purdom responded, "That is probably right, Judge," and added, "I think the court can take judicial notice of attorney's fees." Agreeing judicial notice could be taken of what was reasonable, the trial court expressed the thought that the "objection is good." Thus, Purdom's testimony was automatically excluded unless Saundra demonstrated good cause for its admission. Tex. R.Civ.P. 215(5); *Sharp v. Broadway Nat. Bank,* 784 S.W.2d 669, 671 (Tex.1990); *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987).

Then, Purdom stated his need to get fact witnesses to testify to the number of hours. Again, Allan objected, stating that if the testimony "goes to attorney fees at all, it falls under the category of expert witness." Nevertheless, the trial court, without making a specific finding of good cause to admit Pur-

1. Subsequently, the Legislature repealed Title 2 of the Family Code, which included section 14.33(c), and recodified the Family Code, effective April 20, 1995, by reenacting Title 2 and adding Title 5, which includes section 157.167, the provision for ordering the payment of movant's reasonable attorney's fees. Act of April 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex.Gen. Laws 113, 182, 282.

dom's testimony, allowed his testimony of the hours he spent, together with the exhibit 34, a computer compilation of the time spent, albeit the court refused to permit Purdom "to testify as an expert with regard to the reasonableness or necessity thereof."

Afterwards, the court, reciting the hours Purdom expended, stated that judicial notice was taken of the usual and customary attorney's fees in Lubbock County in arriving at the amount of attorney's fees awarded to Saundra. As authority for the judicial notice, the court cited Texas Civil Practice & Remedies Code Annotated § 38.004 (Vernon 1986) and Texas Rules of Civil Evidence 201.

My brethren conclude that the court did not err in allowing Purdom's evidence of the hours he expended in the cause and in awarding attorney's fees, albeit they employ different rationale for their respective conclusions. Justice Boyd, the author of the lead opinion, considers that good cause existed because Saundra's pleadings for an award of attorney's fees had been on file for six years, Allan could reasonably anticipate an award of attorney's fees, and Purdom's evidence could not constitute an ambush or unfair surprise to him. However, neither the reality that Allan knew Saundra had pleaded for attorney's fees so as to raise a trial issue, nor the absence of ambush or unfair surprise, constituted good cause for Saundra's failure to identify Purdom and his exhibit in response to Allan's discovery request. *Sharp v. Broadway Nat. Bank,* 784 S.W.2d at 671. Allan was entitled to prepare for trial upon Saundra's assurance that neither an expert witness nor documentation prepared by the witness would be produced at trial. The fact that Purdom would testify only about attorney's fees did not excuse his proper identification in discovery, and his evidence should not have been admitted. *Id.* at 671–72.

Justice Boyd also proposes that "to hold that an inadvertent failure to list an attorney of record as a witness on requested attorney's fees would deprive the trial court of its ability to comply with the law," *i.e.,* section 14.33(c), the language which he seems to interpret as requiring a "mandatory award of attorney's fees." If so, I disagree with the interpretation, for by its language, the sec-

tion vests the trial court with the discretion to find that attorney's fees "need not be paid." Furthermore, in the absence of any basis for the determination of the reasonableness of the fees, an award of attorney's fees is not mandated. In any event, the inadvertent failure to list the attorney of record as a witness on requested attorney's fees does not constitute good cause for allowing the undesignated attorney's testimony, *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d at 364, and by disallowing the testimony, the court would comply with the discovery law.

Next, Justice Boyd, noting that the trial court cited section 38.004, *supra,* as authority for the award of attorney's fees, seems persuaded that as in *Budd v. Gay,* 846 S.W.2d 521 (Tex.App.—Houston [14th Dist.] 1993, no writ), the trial court properly considered Purdom's evidence of representation and took judicial notice of the usual and customary attorney's fees without receiving further evidence. As further support for the persuasion, he quoted the language from *Coward v. Gateway Nat. Bank of Beaumont,* 525 S.W.2d at 859, for the holding that the trial court "may examine the case file and is to make a determination of the amount of attorney's fees even if no other evidence is admitted." I am not persuaded to that view for a number of reasons.

First, Purdom's evidence was automatically excluded when Saundra failed to show good cause for its admission, rule 215(5), *supra; Sharp v. Broadway Nat. Bank,* 784 S.W.2d at 671; *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d at 364, and the court could not consider Purdom's evidence of the hours expended. Second, the language quoted from *Coward* is inapplicable, for it was referenced to the Legislature's providing that the amount prescribed in the minimum fee schedules shall be prima facie evidence of reasonable attorney's fees, and minimum fee schedules are no longer a part of Texas jurisprudence. Third, and more important, the judicial notice of attorney's fees authorized by section 38.004, *supra,* is, as held by the *Coward* court and acknowledged by Justice Boyd, applicable only to the causes of

action listed in the preceding section 38.001;[2] and, unlike the action brought on a contract in *Budd,* neither the action for recovery on notes in *Coward,* nor the action regarding child support in this cause, is a section 38.001 claim. Consequently, the judicial notice authorized by section 38.004, *supra,* furnishes no basis to support the award of attorney's fees.

Finally, Justice Boyd approves the trial court's recitation of Texas Rules of Civil Evidence 201, the general "Judicial Notice of Adjudicative Facts" provision, as authority for the award of attorney's fees. In considering the rule in an earlier appeal, we determined, in an opinion authored by Justice Boyd, that to be judicially noticed, an adjudicative fact must not be subject to reasonable dispute, must be capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned, and must be verifiable without the necessity of an assessment of the truth and veracity of an interested witness. *First Nat. Bank of Amarillo v. Jarnigan,* 794 S.W.2d 54, 61 (Tex.App.—Amarillo 1990, writ denied).

It long has been the rule that the reasonable value of an attorney's services is a question of fact for determination by the trier of fact. In making the determination, the trier of fact may take into consideration the facts in relation to the services rendered, as well as the value made by the attorneys, albeit their testimony is opinion evidence which ordinarily is not conclusive. *Gulf Paving Co. v. Lofstedt,* 188 S.W.2d at 160–61. Accordingly, in this cause, as in an insurance case, the reasonableness of attorney's fees is a question of fact, the determination of which must be supported by competent evidence, and not adjudicated on judicial knowledge without the benefit of evidence. *Great American Reserve Insurance Co. v. Britton,* 406 S.W.2d 901, 907 (Tex.1966). Thus, by their very nature, the amount and reasonableness of attorney's fees in a contested child support proceeding do not fall within the definition of, and are not, adjudicative facts of which judicial notice may be taken.

In his concurring opinion, Justice Quinn reasons that attorney Purdom was speaking as a *fact* witness, and Allan's objection to his ability to testify as an *expert* was unavailable to exclude his evidence. The rationale, I submit, is not well-founded.

As explicated in the forepart of this opinion, when Purdom called himself as a witness "on attorney's fees," Allan's objection to his testimony because he was never designated as either an expert or fact witness was sufficient for the automatic exclusion of his testimony in the absence of good cause shown for its admission. Even though Allan considered that the testimony of the hours expended fell under the category of expert witness testimony, the reality that Purdom was never designated as a witness in any capacity automatically excluded his testimony regarding attorney's fees, either as an expert witness, rule 215(5), *supra; Sharp v. Broadway Nat. Bank,* 784 S.W.2d at 671, or as a fact witness. Rule 215(5), *supra; Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d 911, 914 (Tex. 1992).

Moreover, in discovery proceedings, such as those involved in this cause, it is settled that an attorney who is to be called to testify to reasonable and necessary attorney's fees is required to be designated in response to an interrogatory requesting the names of expert witnesses; and, if the attorney is not designated, he or she may not testify absent good cause shown. *Sharp v. Broadway Nat. Bank,* 784 S.W.2d at 670–72; *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d at 364. There can be no doubt that Purdom, particularly by virtue of his certification in Family Law, is especially qualified to express an expert opinion on the reasonableness of attorney's fees in a child support proceeding, and appeared as an expert witness, not as a *fact* witness, for that purpose. Indeed, Purdom recognized that he appeared as an expert witness, for he informed the court, upon sustainment of Allan's objection to his testimony, that he needed to get fact witnesses to

---

**2.** The section authorizes the recovery of reasonable attorney's fees if the claim is for (1) rendered services, (2) performed labor, (3) furnished material, (4) freight or express overcharges, (5) lost or damaged freight or express, (6) killed or injured livestock, (7) a sworn account, or (8) an oral or written contract. Tex.Civ.Prac. & Rem. Code Annotated § 38.001 (Vernon 1986).

testify to the number of hours. Therefore, when Purdom was not designated and his documentation was not identified in response to the interrogatory requesting the names of expert witnesses and documents prepared by experts, his evidence was, under *Sharp* and *Youngblood,* automatically excluded upon the objection made when good cause for its admission was not shown.

. It follows that absent any admissible evidence of the amount and reasonableness of attorney's fees and any basis upon which the court could take judicial notice of them, there is no support for the attorney's fees awarded Saundra. I, therefore, would sustain Allan's twelfth point of error and reform the judgment by eliminating the award of attorney's fees to Saundra. Because my brethren have not done so, I respectfully dissent.