NO. 07-01-0294-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 13, 2002



______________________________



 


IN THE INTEREST OF C.R.O. AND D.J.O., MINOR CHILDREN




_________________________________



FROM THE 387TH DISTRICT COURT OF FORT BEND COUNTY;



NO. 114,931; HONORABLE ROBERT J. KERN, JUDGE



_______________________________



Before BOYD, C.J., and QUINN and REAVIS, JJ.

 Appellant Jennifer Lee Hylton appeals the trial court's order modifying the parent-child relationship by restricting the minor children's primary residence to Fort Bend County,
Texas or contiguous counties of Texas, as long as appellee William T. O'Brien resides in
Fort Bend County or its contiguous counties. Presenting seven issues, Hylton questions
whether: (1) the trial court abused its discretion in imposing a domicile restriction on the
children's primary residence to the Fort Bend County area; (2) O'Brien presented sufficient
evidence upon which the trial court could exercise its discretion; (3) the trial court abused
its discretion in restricting the children's residence to Fort Bend County or contiguous
counties as long as O'Brien resides in that area; (4) the trial court's order infringes on her
constitutional right to travel and to equal protection of the law; (5) the evidence is legally
and factually sufficient to support findings of fact 18, 23, and 24; (6) she is entitled to
abatement of the appeal until the court fulfills its duty to make complete and meaningful
findings of fact; and (7) the trial court erred in failing to award her attorney's fees. 
Concluding that Hylton has not established a clear abuse of discretion by the trial court, 
based upon the rationale expressed herein, we affirm.

 Hylton and O'Brien were divorced on May 5, 1997, in Georgia. At the time of
divorce, the parties had two sons, C.R.O., who was seven, and D.J.O, who was almost
four. (1) Child custody and other issues were resolved by settlement agreement. Pursuant
to the Georgia decree, the parties were awarded joint legal custody, with Hylton having the
right to primary physical custody. Soon after the divorce, Hylton remarried and moved with
the children to Fort Bend County, Texas. Three months thereafter O'Brien moved to
Melbourne, Florida for an employment opportunity as a health actuary. 

 Hylton's husband, who previously worked for Continental Airlines in Houston for
seven years, resigned his position and accepted new employment with Hawaiian Air for a
substantial pay increase. On July 18, 2000, Hylton notified O'Brien by e-mail of her
husband's job offer and indicated that if he accepted the position, they would be relocating
to Hawaii in September. On August 15, 2000, O'Brien filed a motion to modify the parent-child relationship alleging that the order had become unworkable or inappropriate under
existing circumstances and requesting that the court restrict the domicile of the children to
Fort Bend County, Texas. O'Brien also sought and was granted a temporary restraining
order preventing, among other things, Hylton from removing the children beyond the court's
jurisdiction. On August 20, 2000, Hylton's husband moved to Hawaii to begin his new
employment and she and her four children remained in Fort Bend County. On September
1, 2000, in response to O'Brien's motion, Hylton filed her answer and counter-petition
requesting an increase in child support. In November 2000, O'Brien rented an apartment
in the Fort Bend County area and began more frequent visitation with his sons. O'Brien,
however, did not leave his employment in Florida until the end of February 2001. After
several hearings on temporary orders, on March 15, 2001, the trial court signed its order
which, relevant to this appeal, restricts the children's domicile to Fort Bend County and the
contiguous counties so long as O'Brien continues to reside in that area and increases the
amount of child support.

 We first address Hylton's sixth issue by which she requests that the appeal be
abated and the cause remanded to the trial court to make and file more "complete and
meaningful" findings of fact. She asserts that she has suffered harm by the trial court's
refusal to make and file additional findings of fact as requested because it has prevented
her from properly presenting her appeal. After the trial court filed its findings of fact and
conclusions of law, Hylton filed objections thereto and a request for additional findings of
fact and conclusions of law as follows:

 the court should state the specific reasons for its finding that it is in the best
interest of the children to restrict their domicile to Fort Bend County;

 the court should state the reasons the standard possession order for parents
residing more than 100 miles apart would not provide appropriate visitation
for William T. O'Brien were Jennifer Lee Hylton allowed to relocate; and

 the court should find that the attorney's fees incurred by Jennifer Lee Hylton
are reasonable.


 Following a proper request and reminder, it is mandatory for a trial court to make
and file findings of fact and conclusions of law. Cherne Industries, Inc. v. Magallanes, 763
S.W.2d 768, 771 (Tex. 1989). The failure to respond where all requests have been made
is presumed harmful, unless the record affirmatively shows no injury. Id; see also Tenery
v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996). The appropriate question in determining harm
is whether a party will be forced to guess the reason or reasons that the trial court ruled
against him. City of Los Fresnos v. Gonzalez, 830 S.W.2d 627, 629 (Tex.App.-Corpus
Christi 1992, no writ). 

 Hylton contends that despite her request for additional findings, the trial court did
not address what facts formed the basis of its decision that a domicile restriction would be
in the best interest of the children. She argues that the trial court's refusal to make
additional findings has placed her at a disadvantage in challenging the domicile restriction
on appeal. We disagree. By Finding of Fact 23, which is specifically challenged by Hylton
as not being supported by legally and factually sufficient evidence, the trial court ordered
a domicile restriction "based on the quality of the children's relationship with their father." 
As Hylton has challenged this finding, she has not shown harm or that she was prevented
from properly presenting her complaint on appeal. Thus, we decline to abate the appeal
and remand the cause to the trial court for further findings. Issue six is overruled.

 Next, we continue our analysis by setting forth the appropriate standard of review. 
A trial court's modification order will not be disturbed on appeal unless the complaining
party establishes a clear abuse of discretion. Gillespie v. Gillespie, 644 S.W.2d 449, 451
(Tex. 1982). The test for abuse of discretion is whether the trial court acted without
reference to any guiding rules and principles, or whether it acted arbitrarily and
unreasonably. Downer v. Aquamarine Operators, Inc. 701 S.W.2d 238, 241-42 (Tex.
1985). The fact that a trial court may decide a matter within its discretion in a different
manner than an appellate court does not demonstrate that an abuse of discretion has
occurred. Id. A trial court is in the best position to observe the demeanor and personalities
of the witnesses that cannot be evaluated from a cold reading of the record. Warchol v.
Warchol, 853 S.W.2d 165, 169 (Tex.App.-Beaumont 1993, no writ). Thus, as long as
some evidence of a substantive and probative character exists to support the trial court's
order, no abuse of discretion has occurred. Valdez v. Valdez, 930 S.W.2d 725, 731
(Tex.App.-Houston [1st Dist.] 1996, no writ). 

 The abuse of discretion standard in a family law case overlaps the traditional
sufficiency standard of review. See Crawford v. Hope, 898 S.W.2d 937, 940
(Tex.App.-Amarillo 1995, writ denied) (holding that under the abuse of discretion standard,
legal and factual sufficiency are not independent grounds of error, but are relevant factors
in determining whether the trial court abused its discretion); see also Seidel v. Seidel, 10
S.W.3d 365, 368 (Tex.App.-Dallas 1999, no pet.); Doyle v. Doyle 955 S.W.2d 478, 479
(Tex.App.-Austin 1997, no pet.). Thus, in applying the abuse of discretion standard, an
appellate court must engage in a two-pronged inquiry: (1) whether the trial court had
sufficient evidence upon which to exercise its discretion, and (2) whether the trial court
erred in applying its discretion. In re De La Pena, 999 S.W.2d 521, 525-26 (Tex.App.-El
Paso 1999, no pet.). The traditional sufficiency review applies in the first inquiry and then
a determination must be made whether the trial court's decision was neither arbitrary nor
unreasonable. Id. 

 Findings of fact entered in a bench trial have the same force and dignity as a jury's
verdict. In Interest of Striegler, 915 S.W.2d 629, 638 (Tex.App.-Amarillo 1996, writ
denied); Seidel, 10 S.W.3d at 368. Thus, they are subject to legal and factual sufficiency
challenges where there is a complete statement of facts in the record. Striegler, 915
S.W.2d at 638. In reviewing a legal sufficiency challenge, we must examine the record for
any probative evidence which supports the finding while disregarding all evidence or
reasonable inferences to the contrary. Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982);
Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). A factual sufficiency challenge requires
us to examine the record to determine if there is some probative evidence to support the
finding, and then determine whether, in light of the entire record, the finding is manifestly
unjust. Traylor v. Goulding, 497 S.W.2d 944, 945 (Tex. 1973); In re King's Estate, 150 Tex.
662, 244 S.W.2d 660, 661-62 (1951). 

 In determining conservatorship and possession issues, the best interest of the child
shall always be the primary consideration. Tex. Fam. Code Ann. § 153.002 (Vernon
1996). (2) In addition, the trial court should also seek to implement the public policy of this
State which is to:

 (1) assure that children have frequent and continuing contact with parents
who have shown the ability to act in the best interest of the child;

 (2) provide a safe, stable, and nonviolent environment for the child; and

 (3) encourage parents to share in the rights and duties of raising their child
after the parents have separated or dissolved their marriage.


§ 153.001(a) (Vernon Supp. 2002). The burden of proof by the movant in a motion to
modify the parent-child relationship is by a preponderance of the evidence. § 105.005
(Vernon 1996). A court may modify a joint managing conservatorship upon a showing of
material or substantial change or that the order to be modified has become unworkable or
inappropriate under existing circumstances, and that modification would be a positive
improvement for and in the best interest of the child. § 156.202 (Vernon 1996). (3) 

 By her first, second, third, and fifth issues, Hylton asserts abuse of discretion by the
trial court in imposing a domicile restriction on the children's primary residence to the Fort
Bend County area and challenges the legal and factual sufficiency of the evidence to
support the following findings of fact:

 18. The Court finds that in January 2001, [O'Brien] resigned from his
employment in Melbourne, Florida and incorporated a business in
Texas.

* * *


 21. The Court finds that it is in the best interest of the children that their
domicile be restricted to Fort Bend County, Texas or contiguous
counties thereto, so long as [O'Brien's] primary residence is Fort Bend
County, Texas or contiguous counties thereto.

 22. The Court finds that [O'Brien] has maintained frequent and consistent
contact with the children since the date of divorce on May 5, 1997, in
spite of the distance between [O'Brien's] residence and that of the
children.

 23. The Court finds that based on the quality of the children's relationship
with their father, it is in the best interest of the children that their
domicile be restricted to Fort Bend County, Texas or contiguous
counties thereto.

 24. The Court finds that if the children moved [sic] to Hawaii, their
relationship with their father would be detrimentally impacted and
possession and access would be practically nullified since there would
be at least thirty-two hours of travel time during their periodic period
of access with their father.

 25. The Court finds that the children's intended move to Hawaii would not
have been in their best interest in that their relationship and contact
with their father would be severely impacted.

 26. The Court finds it is in the best interest of the children that the
domicile restriction imposed in the Order in Suit to Modify Parent-Child Relationship signed on March 13, 2001, be removed if [O'Brien]
no longer primarily resides in Fort Bend County, Texas or contiguous
counties thereto.


 Evidentiary review in a relocation case is fact specific and each case must be
evaluated on its own unique facts. Confronted with a case of first impression, the Court
analyzed relocation cases from other jurisdictions to develop guidelines for reviewing a
modification order that removed a domicile restriction. Lenz v. Lenz, 45 Tex. Sup. Ct. J.
781, 2002 LEXIS 75, at *10 (Tex. June 6, 2002). (4) In conducting such a review, we must
endeavor to give meaning to the public policy imperatives of section 153.001(a) of the
Family Code keeping in mind that the primary consideration is the best interest of the
children. Id. at *9. In discussing three cases, the Court considered the following factors:


 reasons for and against the move; education, health, and leisure
opportunities; accommodation of special needs or talents of the
children; effect on extended family relationships; effect on visitation
and communication with the noncustodial parent; the noncustodial
parent's ability to relocate; Baures v. Lewis, 167 N.J. 91, 770 A.2d
214, 229-30 (N.J. 2001);
 parent's good faith in requesting the move; continuation of a
meaningful relationship with the noncustodial parent; economic,
emotional, and education enhancement for the children and the
custodial parent; effect on extended family relationships; Tropea v.
Tropea, 87 N.Y.2d 727, 665 N.E.2d 145, 149-51, 642 N.Y.S.2d 575
(N.Y. 1996); and
 employment and education opportunities of the parents; the ages of
the children; community ties; health and educational needs of the
children; In re Marriage of Burgess, 13 Cal. 4th 25, 913 P.2d 473 (Cal.
1996).


 

 As movant, O'Brien alleged a material and substantial change in circumstances, that
the prior order had become unworkable or inappropriate because Hylton was planning to
relocate to Hawaii, and that the requested modification would be in the best interest of the
children. We must decide whether O'Brien satisfied his burden by presenting some
evidence of a substantive and probative character to support the trial court's imposition of
a domicile restriction. While Texas has not addressed whether relocation, standing alone,
qualifies as a material and substantial change in circumstances, where, as here, the
custodial parent wishes to move a significant distance, a finding of changed circumstances
may be appropriate. Bates v. Tesar, 2002 Tex.App. LEXIS 4130, at *46 (Tex.App.-El
Paso June 6, 2002, no pet. h.), citing Jaramillo v. Jaramillo, 113 N.M. 57, 823 P.2d 299
(1991). Also, since the rendition of the Georgia order, O'Brien established that Hylton
remarried and moved to Texas, his sons have two half sisters, and a move to Hawaii would
make their custody arrangement unworkable or inappropriate.

 It is undisputed that Hylton is a full time caregiver to her sons and that she is
completely devoted to their needs. O'Brien shares a close relationship with his sons and
he has regularly exercised his periods of possession and access. O'Brien explained that
any missed visitation was work-related. Neither the education nor the physical health of
the children is at issue. Hylton acknowledged at trial that a move to Hawaii would impact
the relationship O'Brien has with his sons and that O'Brien and his youngest son share a
strong bond. Before the modification proceeding, Hylton and O'Brien enjoyed a
harmonious relationship for divorced parents and were able to work through any difficulties.

 O'Brien resigned his position in Florida effective at the end of February 2001, and
then filed Articles of Incorporation in Texas for Strategic Health Associates, Inc. In March
2001, he obtained a Texas driving permit. Once settled in Texas, O'Brien enjoyed more
frequent and consistent contact with his children. However, he testified that if the domicile
restriction was lifted and Hylton moved to Hawaii, he would relocate to Florida because he
would have no reason to stay in Texas. O'Brien considered a parallel move to Hawaii and
contacted a headhunter and searched through a Society of Actuary membership book for
possible employment opportunities, but was unable to find a health actuary position.

 O'Brien presented evidence that during a typical three-day weekend, one-way flight
travel from Hawaii to Florida would take ten hours and thirty-nine minutes plus driving time. 
Assuming no delays or cancellations, O'Brien estimated that he would share only 36 hours
with his sons, including time for sleeping. Due to the time difference O'Brien anticipated
that the boys would be tired and probably sleep during his waking hours. Due to the
expense of airline travel, his sons usually travel standby unaccompanied by an adult for
a reduced fare available through Hylton's husband's employment. The evidence
established that from where Hylton would reside in Hawaii, there was only one flight to
Houston per day with no guarantee of a seat or connection in Houston to Florida when
flying standby. Hylton conceded that regardless of whether the boys or O'Brien traveled,
it would be "very straining," and a missed flight would make it impossible to have
meaningful visitation. 

 O'Brien also expressed concern about the stability of Hylton's marriage. Hylton
testified that in April 1999, she discovered that her husband had committed an indiscretion
with another woman and informed O'Brien that she was having marital problems. 
However, according to Hylton, she and her husband sought counseling and renewed their
wedding vows in May 2000. She testified that they are dedicated to a strong, positive
household. 

 The evidence established that the boys have had nine residences in eight years,
with their home in Texas for three years being the longest period of residency. Both sets
of grandparents have homes in Florida and O'Brien's mother cares for the boys during
summer visitation periods. Hylton's sister and the boys' cousins reside in San Antonio and
visit every two to three months. Hylton's husband's parents live in Harris County and visit
twice a month. No one involved in this litigation has any friends or family in Hawaii. 

 O'Brien testified that his primary concern should the boys move to Hawaii is that he
will be "phased out" of their lives due to a lack of meaningful and frequent contact. 
Although Hylton testified that frequent contact could be maintained by regularly scheduled
telephone calls, videos, and e-mails in addition to visitation, O'Brien claimed that there is
no substitute for face-to-face contact and that Hylton's suggestions do not encourage "real
communication." O'Brien also expressed concern that because of the time difference, (5)
there could be no assurance of frequent contact especially by telephone. Summer and
holiday visitation time would not be frequent enough to maintain the type of relationship he
currently enjoys. Additionally, O'Brien testified that the time difference would make it
difficult for he and Hylton to effectively co-parent their children. 

 Hylton presented expert testimony from Barbara Candley, a psychologist who met
with the younger son five times and with the older son three times. The younger son was
treated for depression in 1999. After treatment and medication, he showed improvement. 
According to Candley, the younger son is very fragile and vulnerable and might not be able
to cope with a move, but for his mother's devotion. On cross-examination by the ad litem,
Candley admitted that O'Brien shares a positive relationship with his sons and that his
younger son will need consistent contact for reassurance. The older child is confident,
emotionally strong, and desires to move to Hawaii. 

 Hylton's husband works in aircraft acquisitions and market planning. He resigned
his position with Continental Airlines in Houston for an increase in pay of $50,000 and a
relocation bonus of $20,000. He moved to Hawaii and began his new job in August 2000. 
On November 27, 2000, the Hyltons executed a contract of sale and deposited $5,000 on
a house in Hawaii. Hylton testified that the benefits of moving to Hawaii included financial
stability, a nice home, a smaller city with less pollution, travel adventures for the family to
places like Seattle, Tahiti, Guam, and China, and a less demanding job for her husband. 
However, she testified that if a domicile restriction was imposed, her husband would return
to Texas, but would probably experience difficulty in seeking employment. She feared
financial devastation because the $20,000 relocation bonus would have to be returned. 
Additionally, her husband's occupation requires that he work where an airline is based, and
Continental being the only Houston-based airline, she was not optimistic that he would be
rehired. She noted that the next closest city where he could seek employment would be
Dallas. 

 In considering whether the court's imposition of a domicile restriction to the Fort
Bend County area was proper, in addition to the public policy of this State, we also apply
the Holley factors-a non-exhaustive list of considerations for determining the best interest
of the children. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors
include the desires of the children, the emotional and physical needs of the children now
and in the future, the emotional and physical danger to the children now and in the future,
the parental abilities of the individuals involved, the programs available to those individuals
to promote the best interest of the children, the plans for the children by these individuals,
the stability of the home, the acts or omissions of the parent which may indicate that the
existing parent-child relationship is not proper, and any excuse for the acts or omissions
of the parent. Id.

 Closely scrutinized, the reasons for moving to Hawaii include financial stability,
travel and leisure opportunities, the desire of the older son, and the stability of the post-divorce family unit. However, the best interests of the children and the public policy of this
State are served if O'Brien is permitted to maintain meaningful frequent and continuing
contact and is able to share in the rights and duties of raising his children in a stable
environment. § 153.001(a). O'Brien met his burden and established that the domicile
restriction is a positive improvement and in the best interest of the children for reasons
such as continuing close contact with his children, promoting relationships with
grandparents and relatives, a stable environment after nine residence changes, and
fostering the younger child's emotional and mental well-being. Hylton's financial
considerations for moving to Hawaii are outweighed by the needs of the children to have
frequent and continuing contact with their father. Bates, 2002 Tex.App. LEXIS 4130, at
*49. The evidence presented by O'Brien was of substantive and probative character upon
which the trial court was able to exercise its discretion, and thus, we cannot conclude that
the trial court misapplied its discretion. Thus, there being some evidence to support the
trial court's findings and its order restricting the domicile of the children to the Fort Bend
County area, we conclude that Hylton has not established a clear abuse of discretion by
the trial court. Issues one, two, three, and five are overruled. 

 By her fourth issue, Hylton contends that the imposition of a domicile restriction
infringes on her constitutional right to travel and to equal protection of the law. We
disagree. The right to travel encompasses three different components: (1) the right to
enter and leave another State; (2) the right to be treated as a welcome visitor while
temporarily present in another State; and (3) for those travelers who elect to become
permanent residents, the right to be treated like citizens of that State. Saenz v. Roe, 526
U.S. 489, 490, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). The domicile restriction imposed
by the trial court applied only to the children and did not affect Hylton's ability to exercise
any of the aforementioned rights. Also, the contention that a domicile restriction infringes
on a parent's constitutional right to travel was rejected by two of our sister courts in Bates
v. Tesar, 2002 Tex.App. LEXIS 4130 (Tex.App.-El Paso June 6, 2002, no pet. h.), and
Lenz v. Lenz, 40 S.W.3d 111, 118 n.3 (Tex.App.-San Antonio 2000), rev'd on other
grounds, 45 Tex. Sup. Ct. J. 781, 2002 LEXIS 75 (Tex. June 6, 2002). In Bates, citing
Lenz, the court held that the mother's constitutional right to travel was not violated by the
trial court's order requiring the children to relocate back to where their father resided
because the benefits in removing the children to reside with their mother was outweighed
by the importance of having continued contact with their father. See also § 153.001(a)(1)
(Vernon Supp. 2002) (providing that the public policy of this State is to assure that children
will have frequent and continuing contact with parents who have shown the ability to act
in their best interest). Thus, weighing the benefits of relocating the children to Hawaii
against the importance of having continued contact with their father, we find that the
domicile restriction imposed by the trial court did not violate Hylton's constitutional right to
travel. A review of the record demonstrates that Hylton apprised the trial court of the
infringement of her constitutional right to travel in her objections to the judgment; however,
she did not raise her equal protection contention below. Thus, she has waived that portion
of her issue on appeal. Hollified v. Hollified, 925 S.W.2d 153, 156-57 (Tex.App.-Austin
1996, no writ). Issue four is overruled.

 By her seventh issue, Hylton contends the trial court erred in failing to award her
attorney's fees. We disagree. An award of attorney's fees in a suit affecting the parent-
child relationship is discretionary with the trial court. § 106.002 (Vernon Supp. 2002); see
also Bruni v. Bruni, 924 S.W.2d 366, 368 (Tex. 1996). The trial court's order provides:

 IT IS ORDERED that each party shall be responsible for his or her own
attorney's fees incurred as a result of legal representation in this case.


 IT IS FURTHER ORDERED that each party shall pay fifty percent (50%) of
attorney fees owed to Sally Brown as a result of her representation in this
case as Guardian Ad Litem for the children upon presentation of her itemized
statements.


 Both parties in the underlying suit sought affirmative relief from the trial court. 
O'Brien filed his motion seeking to modify the terms and conditions for access to or
possession of the children and for imposition of a domicile restriction. He later amended
his motion and requested that he be appointed primary joint managing conservator. Hylton
filed her counter-petition seeking to have child support increased. O'Brien was successful
in having the trial court impose a domicile restriction and Hylton was successful in having
the amount of child support increased. Thus, we find the trial court did not abuse its
discretion in requiring each party to be responsible for their own attorney's fees and for fifty
percent of the guardian ad litem's fees. Issue seven is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice



Quinn, J., concurring.


Publish.

 

NO. 07-01-0294-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 13, 2002


______________________________



IN THE INTEREST OF C.R.O. AND D.J.O., MINOR CHILDREN




_________________________________



FROM THE 387TH DISTRICT COURT OF FORT BEND COUNTY;



NO. 114,931; HON. ROBERT J. KERN, PRESIDING


_______________________________
 

Concurring Opinion


______________________________



Before BOYD, C.J., QUINN and REAVIS, J.J.

 I concur, in general, with the opinion of the majority but write separately to further
clarify my reasons for affirming the decision of the trial court.

 First, though Jennifer Lee Hylton complains of the directive requiring her two
children with William O'Brien to live in Fort Bend County or counties contiguous thereto,
she does so in a most restrictive way. That is, the framework in which her issues are cast
is quite limited and limiting. She is not complaining about being unable to domicile her
children anywhere other than those particular counties. Rather, she simply questions the
restriction to the extent it prevents the youths from moving across the globe to Hawaii. 
And, therein lies the rub. Given the applicable standard of review of abused discretion,
Seidel v. Seidel, 10 S.W.3d 365, 368 (Tex. App - - Dallas 1999, no pet.), and the deference
we must accord the trial court's fact findings, I too believe that evidence and authority
supports that court's implicit decision viz domicile in Hawaii. The same is not necessarily
true regarding domicile anywhere other than Fort Bend County and those counties
contiguous with it. But, since Hylton does not attack the restriction on the ground that it
prevents the children from living in locales other than Hawaii, the issue of whether the
directive is overly restrictive in general is not before us.

 Second, to the extent that Hylton asserts that the trial court's directive also violates
her right to equal protection, I find the argument insufficiently briefed. She offered no
substantive analysis or authority explaining how that right was violated. Tex. R. App. P. 
38.1(h); In re Williams, 998 S.W.2d 724, 730 (Tex. App. - - Amarillo 1999, no pet.) (holding
that the failure to accompany an issue with substantive analysis or citation to legal authority
results in the waiver of that issue). 

 Third, as to the assertion that her purported constitutional right to travel to Hawaii
is contravened, I cannot overrule the issue by concluding that the restriction impedes the
children's mobility, as opposed to Hylton's. Like the Supreme Court in Ex parte Rhodes,
163 Tex. 31, 352 S.W.2d 249 (Tex. 1961), I too recognize that a mother would not likely
move without her child. Id. at 251. Nor do I find acceptable the alternative that in return
for moving to Hawaii, she must relinquish custody of her children.

 Nevertheless, the truism that no right is absolute is also something I cannot ignore. 
 And, to be weighed against Hylton's alleged right to live in Hawaii are, at the very least,
1) the State's interest in having both parents share the duty of raising their offspring, Lenz
v. Lenz, 79 S.W.3d at 14 (acknowledging this to be an aspect of the public policy of
Texas), 2) the father's interest in interacting with his children, Id. at 18, and 3) the children's
interest in interacting with both their parents. Hylton addressed none of the countervailing
factors in her argument. Nor does she suggest that other reasonable measures could
have been enacted which were of lesser preclusive affect and which furthered the interests
of all involved to the greatest extent possible. Instead, she merely implies that her right to
travel is preeminent. With this, I cannot agree. Simply put, a state's interest in assuring
that children have meaningful interaction with both parents (assuming the parents have not
somehow abused or legally lost that opportunity) is sufficiently compelling to temper
Hylton's purported right to live in Hawaii. See Dupree v. Texas Dept. of Protective and
Regulatory Services, 907 S.W.2d 81 (Tex. App. - - Dallas 1995, no writ) (holding the goal
of establishing a stable, permanent home for a child is a compelling interest of the
government which includes preserving the parent-child relationship.) 


 Brian Quinn

 Justice



Publish.

1. After the divorce, Hylton and her husband had two daughters, half sisters to
Hylton's sons.
2. Unless otherwise designated, all section references are to the Texas Family Code.
3. The Legislature repealed section 156.202 effective September 1, 2001. However,
because O'Brien's motion to modify was filed before the effective date, section 156.202
applies. See Act of May 22, 2001, 77th Leg., R.S., ch. 1289, §§ 12(2) and 13, 2001 Tex.
Gen. Laws 3108, 3111.
4. Although this appeal concerns the trial court's imposition of a domicile restriction,
the factors reviewed in Lenz are instructive.
5. Because Hawaii does not recognize daylight savings time there would be times
when the time difference would be five hours and other times six hours.