In re A.J.J. and S.R.J., children

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-265-CV

IN THE INTEREST OF A.J.J. AND S.R.J., 

CHILDREN

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In this child support modification case, Robert Paul J. appeals from an adverse judgment for Jean Zanker J.  In three issues, Robert contends that the trial court abused its discretion by denying his request to reduce his child support obligation, by actually increasing it instead, and by awarding Jean attorney’s fees.  Robert asserts that the uncontroverted evidence shows that he involuntarily lost his employment and earns considerably less than when the child support obligation was first established, that Jean did not countersue for an increase in child support, that the issue was not tried by consent, and that the trial court abused its discretion by awarding Jean attorney’s fees.  We will affirm.

The parties were divorced in July 1997 and, in the agreed final divorce decree, Robert was ordered to pay $900 per month for the support of the parties’ two children, A.J.J. and S.R.J.  In January 2003, Robert petitioned to reduce his child support obligation.  Jean filed a general denial and asked “that the Court make proper orders for the support of the children.”  After a hearing, the trial court denied Robert’s request to reduce child support, granted Jean an increase in child support to $1,361.81 per month, and awarded Jean $1,500 in attorney’s fees.  This appeal followed. 

In his first issue, Robert complains that the trial court abused its discretion by denying his request for a reduction in child support and by increasing his child support obligation instead, because the uncontroverted evidence shows that he was involuntarily terminated from his last employment, has made reasonable but unsuccessful efforts to replace his lost income, and now earns considerably less than he did when the original $900 child support obligation was established. 

The trial court has broad discretion in setting and modifying child support payments and, absent a clear abuse of that discretion, we will not disturb the trial court's order on appeal.
(footnote: 2) 
 To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, in other words, whether the act was arbitrary or unreasonable.
(footnote: 3)  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.
(footnote: 4)  
 Legal and factual sufficiency of the evidence are relevant factors for use in determining whether an abuse of discretion has occurred, but they are not independent grounds for asserting error.
(footnote: 5) 
 An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.
(footnote: 6) 
 We will not reverse the trial court's judgment merely because we consider the amount of the child support award either too high or too low.
(footnote: 7)
 To be entitled to a reduction in his child support obligation, Robert had the burden of proving either that:

•the circumstances of the child or a person affected by the child support order had materially and substantially changed since the date of the order’s rendition; or

•it had been three years since the child support order was rendered or last modified and the monthly amount of the child support award under the order differed by either 20 percent or $100 from the amount that would be awarded in accordance with child support guidelines.
(footnote: 8)

Robert asserts that the evidence he presented at trial regarding the reduction in his income satisfied both of these burdens.  But there is no evidence in the record regarding what Robert’s income was at the time the trial court entered the child support order as part of the 1998 agreed decree of divorce.

Robert did put on evidence of his income in March 2001, when the trial court modified the possession and access provisions of the divorce decree.  March 2001 is not, however, “the date of the order’s rendition” for purposes of proving a material and substantial change in circumstances because the March 2001 order did not modify the child support provisions in the divorce decree.
(footnote: 9)  Therefore, Robert did not prove that his circumstances had materially and substantially changed since the date of the child support order’s rendition in 1998,
(footnote: 10) and he
 was not entitled to a reduction in his child support obligation unless he established that the $900 child support award in the divorce decree differed by either 20 percent or $100 from the amount that would be awarded in accordance with child support guidelines.
(footnote: 11) 

The family code provides that a parent of two children with monthly net resources of less than $6,000 should pay 25 percent of his net resources for child support.
(footnote: 12) 
 “Net resources” include, among other things, 100 percent of all wage and salary income, self-employment income, severance pay, and unemployment benefits.
(footnote: 13)
 Applying these principles to the child support guidelines, a $900-per- month child support obligation for two children would correspond to a gross annual income of approximately $57,000, or $3,588.62 net monthly income.
(footnote: 14)  
Thus, to meet his burden of showing a 20 percent or $100 difference under section 156.401, Robert was required to prove that his gross annual income had dropped to less than $50,000, or $3,180.81 net monthly income.
(footnote: 15) 
 As we discuss below, there is evidence from which the trial court reasonably could have concluded that Robert’s net resources had not fallen below this level.

The record shows that, in mid-January 2003, Robert was laid off from his job as a manager for a mobile DSL company because his position was eliminated.  After the lay off, Robert had made some efforts to find another job, but his preference was to support himself through self-employment.   Toward that end, while he was still employed, Robert had started two businesses in March and November 2002—a concessions company and a personal services company. 

After his mid-January 2003 layoff, Robert’s sources of income included unemployment benefits of “a little over $300 a week” and an unspecified amount of severance pay from his former employer.
(footnote: 16)  In addition, Robert had income from his two businesses.

By October 2003, the personal services company had posted a profit of $731.72.  The concessions company had posted a loss of $34,635.02 in 2002, which included $8,400 for depreciation of the company’s equipment.   Robert did not know whether the company would make a profit in 2003, but its bank records for the first six months of 2003 showed deposits of $39,870.89.  In addition, Robert testified that he planned to use the income from his businesses to pay his living expenses once his unemployment ran out. 

Despite the fact that Robert was not entirely forthcoming about the amount of his 2003 income, the trial court reasonably could have concluded from the evidence that Robert’s annual income had not dropped below $50,000 and that his net resources would not have warranted a 20 percent or $100 reduction in his child support obligation.
(footnote: 17) 
 Accordingly, Robert did not meet his burden of proof under section 156.401, and the trial court did not abuse its discretion by denying his request to reduce his child support obligation.
(footnote: 18) 

Next, Robert complains that the trial court abused its discretion by increasing the amount of his child support obligation from $900 to $1,361.81 per month despite evidence that he had been terminated involuntarily from his employment in January 2003 and was earning considerably less than his $93,000 annual salary at the time of his layoff. 

The trial court found that Robert’s earning capacity was at least $93,000 per year, that he had chosen not to seek salaried employment, that he was voluntarily unemployed or underemployed, and that “it is possible that [Robert’s] annual income for 2003, combining his income from [his concessions and personal services companies], his severance package, and his employment benefits, will exceed $93,000.00.”  The trial court further found that Robert’s net resources had increased sufficiently since the 1998 child support order so that his child support obligation should be increased, in accordance with the child support guidelines, to $1,385.06 per month.
(footnote: 19)  Robert complains that the evidence does not support these findings.

A parent’s duty to support his children is not limited to his ability to pay from his current earnings, but also extends to his financial ability to pay from any and all sources that might be available to him.
(footnote: 20)  
The trial court may also take a parent's earning potential into account when determining the amount of child support the parent must pay.
(footnote: 21) 
 In determining earning potential, the court may consider a parent’s unemployment or underemployment if there is evidence 

that the parent reduced his income in order to decrease his child support payments.
(footnote: 22)  The requisite intent may be inferred from the parent's business reversals, business background, and earning potential, while keeping in mind the parent’s right to pursue his own happiness.
(footnote: 23) 
 If the evidence shows that the parent’s actual income is significantly less than his potential income due to intentional unemployment or underemployment, the trial court may apply the statutory child support guidelines to the parent’s potential income rather than his actual income.
(footnote: 24) 

In this case, Robert put on evidence that, after losing his $93,000-per-year job involuntarily, he had attempted to find a new job by placing his resume on an internet web site, doing job searches on the internet, checking job listings in trade journals, networking and maintaining his contacts with people in the industry, and checking with AT&T, for whom he had formerly worked as a technician.  As a result of these efforts, he had concluded that “[t]here just aren’t any positions for managers in the technical field right now.”  He further testified that he had no skills that were easily transferable to another field. There is no evidence, however, regarding the frequency of his job searches or when he had last searched for employment.  Further, he had not sent out any resumes to prospective employers; he had simply posted his resume on the internet so employers could contact him.  Most importantly, Robert testified that, instead of getting back into his former field, he would rather be self-employed, get his own businesses going, and work for himself.  From this evidence, the trial court reasonably could have concluded that Robert’s unemployment or underemployment was intentional.

Further, the trial court reasonably could have concluded that Robert’s earning capacity was at least $93,000 per year.  In 2002, Robert had opened and operated his two businesses on a part-time basis for several months before his termination.  Although he lost money on the concessions business in 2002, it is reasonable to expect that his first year of operations would have had expensive start-up costs and that the business would generate more income in 2003 since Robert could pursue it full-time.  Indeed, the $39,870.89 of income reflected in the concessions business’s bank deposits for the first six months of 2003, extrapolated over twelve months, would be $79,741.78.
(footnote: 25)
 In addition, Robert had received at least $12,900 in unemployment benefits in 2003, income of $731.72 from his personal services business, and an unspecified amount of severance from his former employer.  All of this evidence supports the trial court’s finding regarding Robert’s earning capacity.

Finally, Robert sought to have his child support obligation reduced to the amount he would have owed if his only income was his “just over $300 per week” in unemployment benefits.  His child support obligation based on that income would have been only $282 per month.  In light of Robert’s business background, his earning potential, his lack of forthrightness about his income for 2003, and his desire to have his child support payments adjusted based on the amount of his unemployment benefits, the trial court reasonably could have concluded that Robert’s unemployment or underemployment was for the purpose of reducing his child support payments.
(footnote: 26) 
 Accordingly, we hold that the trial court did not abuse its discretion by calculating Robert’s child support obligation based on his earning potential and by increasing the amount of his child support obligation accordingly.  We overrule Robert’s arguments regarding the amount of his child support obligation.

Robert’s final argument under his first issue is that the trial court erroneously admitted into evidence Jean’s exhibits 1, 3, and 4.  Robert asserts that exhibit 1, which consists of copies of bank statements from his concessions business bank account, should not have been admitted because it is hearsay.  Robert acknowledged at the modification hearing, however, that he had produced the bank statements to Jean in response to discovery requests. Therefore, the bank statements were not hearsay because they were admissible as admissions by a party opponent.
(footnote: 27)
 Robert also objects to the admission of exhibits 3 and 4, which are a summary of the bank deposits for his concessions business account and a table of child support calculations based on the family code’s child support guidelines.  He complains that these exhibits do not qualify as summaries. 

The contents of voluminous, admissible writings may be presented in the form of a chart, summary, or calculation.
(footnote: 28) 
 Exhibit 3 is a summary of the bank deposits recorded on the bank statements that we have held were admissible. Moreover, regarding exhibit 4, Robert’s counsel stated, “I certainly don’t mind you looking at the child support obligation, what it would be, as an exhibit, as a demonstrative piece of evidence, that’s fine.”  Accordingly, the trial court did not err by admitting exhibits 3 and 4.  We overrule Robert’s first issue.
(footnote: 29)
 In his second issue, Robert asserts that the trial court abused its discretion by increasing his child support obligation because Jean did not request the increase in her pleadings and the issue was not tried by consent.

As long as the trial court has jurisdiction over the case, technical pleading rules are of little importance in determining issues concerning child custody and support matters.
(footnote: 30) 
 In this case, the trial court’s jurisdiction to decide the child support issue is not in dispute.  Further, Robert’s petition asked the trial court to reduce his child support obligation due to a material and substantial change in circumstances, and Jean’s response asked the trial court to “make proper orders for the support of the children.”  These pleadings are sufficient to support the increase in child support.
(footnote: 31)  Accordingly, we overrule Robert’s second issue.
(footnote: 32)
 In his third issue, Robert contends that the trial court abused its discretion by awarding Jean attorney’s fees.  Robert asserts that the fees were not necessary because he merely requested that his child support obligation be set in accordance with child support guidelines after he involuntarily lost his job.  He further asserts that there is little or no evidence supporting the fee award. 

The award of attorney's fees in a suit affecting the parent-child relationship is within the trial court's discretion.
(footnote: 33) 
 Because a parent has an obligation to support his minor children, the fees may be awarded as necessaries for the children.
(footnote: 34) 
 The fee award must, however, be supported by evidence regarding the hours spent on the case, the nature of preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates.
(footnote: 35) 
 Sworn testimony from an attorney concerning attorney's fees is considered expert testimony.
(footnote: 36) 

In this case, Jean’s attorney testified that she had been licensed for nearly ten years and that her practice was 90 to 95 percent family law.  In addition, she testified that her hourly rate was $175, which was reasonable and necessary in Denton County for this type of case.  She further testified that she had charged Jean $1500 to represent her, which included conducting discovery, conducting research, preparing a motion for new trial,
(footnote: 37) and preparing for the hearing on the motion to modify child support.  Robert had the opportunity to cross-examine Jean’s attorney about the reasonableness and necessity of her fees, but he did not do so. 

Although Jean’s attorney did not specify the number of hours she had spent on the case, the trial court was within its discretion in concluding from the other information given in her testimony that the $1500 amount charged was reasonable and in awarding the fees as necessaries for Robert’s children.
(footnote: 38) 
We overrule Robert’s third issue.

Having overruled all of Robert’s issues, we affirm the trial court’s judgment.

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN, J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

DELIVERED: April 21, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
In re P.J.H.,
 25 S.W.3d 402, 405 (Tex. App.—Fort Worth 2000, no pet.). 

3:
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).

4:
Id
.

5:
In re J.E.P.,
 49 S.W.3d 380, 386 (Tex. App.—Fort Worth 2000, no pet.). 

6:
Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 211 (Tex. 2002). 

7:
P.J.H.,
 25 S.W.3d at 405. 

8:
Tex. Fam. Code Ann.
 § 156.401(a) (Vernon Supp. 2004-05).

9:
See Ritter v. Wiggins,
 756 S.W.2d 861, 864 (Tex. App.—Austin 1988, no writ) (holding that date of divorce decree was relevant date from which to reference material change in conditions where later-entered modification order did not concern child support obligations).

10:
See
 
Tex. Fam. Code Ann. 
§ 156.401(a)(1). 

11:
See id.
 § 156.401(a)(2).

12:
Id.
 § 154.125(b) (Vernon 2002).

13:
Id.
 § 154.062(b). 

14:
See id.
 § 154.061(b) tax charts (Vernon Supp. 2004-05).

15:
See id.
 § 156.401(a)(2); 
see also id.
 §§ 154.061(b) tax charts, 154.125(b). 

16:
Robert testified that he did not know how much severance pay he had received.  Because Robert was not laid off until January 2003, we disagree with his contention that the severance package should not have been included in the trial court’s calculation of his 2003 income. 

17:
See
 
Tex. Fam. Code Ann.
 § 156.401(a)(2). 

18:
See Butnaru
, 84 S.W.3d at 211; 
Downer
, 701 S.W.2d at 241-42.

19:
The trial court calculated Robert’s net resources to be $5,540.22, based on his earning capacity of $93,000, and then, in accordance with the child support guidelines, calculated his child support obligation for two children at 25 percent of that amount, or $1,385.06.  
See
 
Tex. Fam. Code Ann.
 § 154.125(b).  This amount differs by more than 20 percent or $100 from Robert’s $900-per-month child support obligation in the 1998 child support order, 
see id.
 § 156.401(a)(2); however, the trial court only increased his monthly child support obligation to $1,361.81.

20:
P.J.H.,
 25 S.W.3d at 406; 
In re Striegler,
 915 S.W.2d 629, 638 (Tex. App.—Amarillo 1996, writ denied).  

21:
Striegler,
 915 S.W.2d at 638; 
Powell v. Powell,
 721 S.W.2d 394, 396 (Tex. App.—Corpus Christi 1986, no writ). 

22:
See
 
Tex. Fam. Code Ann.
 § 154.066 (Vernon 2002); 
P.J.H.,
 25 S.W.3d at 405-06; 
Roosth v. Roosth,
 889 S.W.2d 445, 454 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Robert asserts that the evidence must also show that his initial reduction in income was voluntary.  We disagree.  While intentional underemployment requires a voluntary choice by the obligor, 
see In re D.S.,
 76 S.W.3d 512, 520 (Tex. App.—Houston [14th Dist.] 2002, no pet.); 
Starck v. Nelson,
 878 S.W.2d 302, 307 (Tex. App.—Corpus Christi 1994, no writ), that can include the choice to either become or remain unemployed or underemployed.

Further, the family code and some Texas courts do not require that the intentional unemployment or underemployment be for the purpose of decreasing child support payments.  
See
 
Tex. Fam. Code Ann.
 § 154.066; 
see also D.S.,
 76 S.W.3d at 520; 
In re S.B.C.,
 952 S.W.2d 15, 18 (Tex. App.—San Antonio 1997, no writ); 
Baucom v. Crews,
 819 S.W.2d 628, 633 (Tex. App.—Waco 1991, no writ).  Nonetheless, we will follow our own precedent, which imposes such a requirement, because it does not affect the disposition of this appeal.  
See P.J.H.,
 25 S.W.3d at 405-06.

23:
Id.
 

24:
Tex. Fam. Code Ann.
 § 154.066; 
Tenery v. Tenery,
 955 S.W.2d 337, 340 (Tex. App.—San Antonio 1997, no pet.).

25:
Although Robert disputes that the $39,870.89 in deposits in the concessions business’s account represent income, he did not provide the trial court any financial statements or other data for 2003 regarding that business. 

26:
See P.J.H.,
 25 S.W.3d at 405-06. 

27:
See
 
Tex. R. Evid.
 801(e)(2)(B) (providing that statement of which party has manifested a belief in its truth is not hearsay). 

28:
Tex. R. Evid.
 1006. 

29:
Robert’s other objections to exhibits 1, 3, and 4 are waived because they either were not raised in the trial court or are not briefed on appeal.  
See
 
Tex. R. App. P.
 33.1(a), 38.1(h); 
Fredonia State Bank v. Gen. Am. Life Ins. Co.,
 881 S.W.2d 279, 284 (Tex. 1994).

30:
See Leithold v. Plass,
 413 S.W.2d 698, 701 (Tex. 1967); 
Lohmann v. Lohmann,
 62 S.W.3d 875, 878-79 (Tex. App.—El Paso 2001, no pet.); 
Danburg v. Danburg,
 444 S.W.2d 845, 848 (Tex. Civ. App.—Houston [14th Dist.] 1969, no writ). 

31:
See In re V.T.,
 No. 2-03-248-CV, 2004 WL 1353024, at *1 (Tex. App.—Fort Worth Jun. 17, 2004, pet. denied) (mem. op.) (holding that pleading asking court to 
make proper orders for the support of the child and to modify conservators’ relative duties supported child support increase); 
Devine v. Devine,
 490 S.W.2d 246, 247 (Tex. Civ. App.—Tyler 1972, no writ); 
Danburg,
 444 S.W.2d at 848 (both holding that father’s pleadings seeking a reduction in child support authorized trial court to consider all issues pertaining to child support, including increasing support if necessary).

32:
The cases on which Robert relies are inapposite because they did not involve family law matters.  
See Horizon/CMS Healthcare Corp. v. Auld,
 34 S.W.3d 887 (Tex. 2000); 
Roark v. Allen,
 633 S.W.2d 804 (Tex. 1982); 
RE/MAX of Tex., Inc. v. Katar Corp.,
 961 S.W.2d 324 (Tex. App.—Houston [1st Dist.] 1997), 
writ denied,
 989 S.W.2d 363 (Tex. 1999).

33:
Tex. Fam. Code Ann.
 § 106.002(a) (Vernon Supp. 2004-05); 
Bruni v. Bruni,
 924 S.W.2d 366, 368 (Tex. 1996). 

34:
London v. London,
 94 S.W.3d 139, 146 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

35:
Thomas v. Thomas,
 895 S.W.2d 895, 898 (Tex. App.—Waco 1995, writ denied); 
Goudeau v. Marquez,
 830 S.W.2d 681, 683 (Tex. App.—Houston [1st Dist.] 1992, no writ). 

36:
Nguyen Ngoc Giao v. Smith & Lamm, P.C.,
 714 S.W.2d 144, 148 (Tex. App.—Houston [1st Dist.] 1986, no writ).

37:
The motion for new trial, which was successful, pertained to a default judgment and is not at issue in this appeal. 

38:
See, e.g., Ragsdale v. Progressive Voters League,
 801 S.W.2d 880, 882 (Tex. 1990) (holding that uncontroverted testimony regarding attorney’s fees may be taken as true as a matter of law where opposing party had means and opportunity of disproving same but failed to do so).