NO. 07-09-0256-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 25, 2009

______________________________

WESTRIDGE APARTMENTS, APPELLANT

V.

PAULINA GOMEZ AND ALBERT MADRID, APPELLEES

_________________________________

FROM THE COUNTY COURT AT LAW #3 OF LUBBOCK COUNTY;

NO. 2008-562,232; HONORABLE JUDY C. PARKER, JUDGE

_______________________________

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

Appellant, Westridge Apartments, appeals a judgment that awards appellees, Paulina Gomez and Albert Madrid, $46,546.33, minus a $1,350 credit in favor of Westridge, and the denial of Westridge’s Motion for New Trial.  We dismiss for lack of jurisdiction.

Background

On January 22, 2009, the trial court signed the Final Judgment from which Westridge appeals.  On February 23, 2009, Westridge timely filed a Motion for New Trial.  On April 14, 2009, the trial court entered an order denying Westridge’s motion for new trial.  According to Westridge, it did not receive notice of the trial court’s order denying the motion for new trial until July 7, 2009.  Westridge then filed its notice of appeal on July 14, 2009.

Pursuant to Texas Rule of Appellate Procedure 42.3,
(footnote: 1) we notified Westridge that its notice of appeal appears to have been untimely filed and we directed Westridge to file a written response explaining why this Court has jurisdiction over this appeal on or before August 17, 2009.  Westridge filed a response on August 14, 2009.

Appeal of the Judgment

Under TRAP 26.1(a)(1), if a motion for new trial is timely filed, the notice of appeal must be filed within 90 days after the date judgment was signed.  Additional time to file a notice of appeal is allowed so long as the notice is filed within 15 days after the applicable deadline under TRAP 26.1.  
See
 TRAP 26.3 (allowing an extension of time); 
Verburgt v. Dorner
, 959 S.W.2d 615, 617 (Tex. 1997) (holding that a motion for extension of time is “necessarily implied” when an appellant, acting in good faith, files a late notice of appeal within the 15 day period of TRAP 26.3).  However, a trial court’s denial of a motion for new trial does not extend the appellate timetable beyond the 90 days set forth in TRAP 26.1.  
See
 
Garza v. Hibernia Nat’l Bank
, 227 S.W.3d 233, 233 nn.1-2 (Tex.App.–Houston [1
st
 Dist.] 2007, no pet.) (denial of a motion for new trial does not extend appellate deadlines and, where notice of appeal is filed more than 15 days after it was due, the 
Verburgt
 rule does not apply).

In the present case, Westridge filed its notice of appeal 170 days after the judgment appealed from was signed.  Because Westridge’s notice of appeal of the judgment was not filed within the time allowed by the Texas Rules of Appellate Procedure, we are without jurisdiction to consider any appellate issue relating to the trial court’s January 22, 2009, Final Judgment.

Appeal of the Denial of Westridge’s Motion for New Trial

The denial of a motion for new trial is an appealable order.  
See
 
Strackbein v. Prewitt
, 671 S.W.2d 37, 38 (Tex.1984).  However, TRAP 26.1 establishes the deadline for filing a notice of appeal based on the date that the judgment was signed.  The denial of a motion for new trial, being dependent upon the entry of the final judgment, must be appealed in the same manner as the final judgment is appealed.  
See
 TRAP 26.1; 
Powell v. Linh Nutrition Programs, Inc.
, No. 01-03-00919-CV, 2005 Tex.App. LEXIS 1317, at *2 (Tex.App.–Houston [1
st
 Dist.] 2005, no pet.) (deadline for filing notice of appeal runs from date final judgment is signed and not from date motion for new trial is denied, even if the appeal is directed toward the denial of the motion for new trial). 

Thus, because Westridge’s notice of appeal of the judgment was untimely filed, Westridge’s notice of appeal of the denial of its motion for new trial is, likewise, untimely filed and does not invoke this Court’s jurisdiction.

Westridge contends that it did not receive notice of the trial court’s denial of its motion for new trial until July 7, 2009, and, under Texas Rule of Civil Procedure 306a.4, its deadline to file notice of appeal of the denial began on that date.  However, under Texas Rule of Civil Procedure 329b(c), Westridge’s motion for new trial was overruled by operation of law on April 7, 2009.  
See
 
Tex. R. Civ. P
. 329b(c) (if motion for new trial not determined by written order signed within 75 days after the judgment is signed, the motion shall be considered overruled by operation of law).  Thus, Westridge had actual notice that its motion had been overruled on April 7, 2009 and, therefore, its notice of appeal was untimely filed.

Conclusion

Because Westridge did not timely file its notice of appeal, our jurisdiction has not been invoked and we must dismiss this appeal.  TRAP 42.3(a).

Mackey K. Hancock

        Justice

l court to make and file more “complete and meaningful” findings of fact.  She asserts that she has suffered harm by the trial court’s refusal to make and file additional findings of fact as requested because it has prevented her from properly presenting her appeal.  After the trial court filed its findings of fact and conclusions of law, Hylton filed objections thereto and a request for additional findings of fact and conclusions of law as follows:

the court should state the specific reasons for its finding that it is in the best interest of the children to restrict their domicile to Fort Bend County;

the court should state the reasons the standard possession order for parents residing more than 100 miles apart would not provide appropriate visitation for William T. O’Brien were Jennifer Lee Hylton allowed to relocate; and

the court should find that the attorney’s fees incurred by Jennifer Lee Hylton are reasonable.

Following a proper request and reminder, it is mandatory for a trial court to make and file findings of fact and conclusions of law.  Cherne Industries, Inc. v. Magallanes, 763 S.W.2d 768, 771 (Tex. 1989).  The failure to respond where all requests have been made is presumed harmful, unless the record affirmatively shows no injury.  
Id
;
 see also
 Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996).  The appropriate question in determining harm is whether a party will be forced to guess the reason or reasons that the trial court ruled against him.  City of Los Fresnos v. Gonzalez, 830 S.W.2d 627, 629 (Tex.App.–Corpus Christi 1992, no writ).  

Hylton contends that despite her request for additional findings, the trial court did not address what facts formed the basis of its decision that a domicile restriction would be in the best interest of the children.  She argues that the trial court’s refusal to make additional findings has placed her at a disadvantage in challenging the domicile restriction on appeal.  We disagree.  By Finding of Fact 23, which is specifically challenged by Hylton as not being supported by legally and factually sufficient evidence, the trial court ordered a domicile restriction “based on the quality of the children’s relationship with their father.”  As Hylton has challenged this finding, she has not shown harm or that she was prevented from properly presenting her complaint on appeal.  Thus, we decline to abate the appeal and remand the cause to the trial court for further findings.  Issue six is overruled.

Next, we continue our analysis by setting forth the appropriate standard of review.  A trial court’s modification order will not be disturbed on appeal unless the complaining party establishes a clear abuse of discretion.  Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).  The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, or whether it acted arbitrarily and unreasonably.  Downer v. Aquamarine Operators, Inc. 701 S.W.2d 238, 241-42 (Tex. 1985).  The fact that a trial court may decide a matter within its discretion in a different manner than an appellate court does not demonstrate that an abuse of discretion has occurred.  
Id.
  A trial court is in the best position to observe the demeanor and personalities of the witnesses that cannot be evaluated from a cold reading of the record.  Warchol v. Warchol, 853 S.W.2d 165, 169 (Tex.App.–Beaumont 1993, no writ).  Thus, as long as some evidence of a substantive and probative character exists to support the trial court’s order, no abuse of discretion has occurred.  Valdez v. Valdez, 930 S.W.2d 725, 731 (Tex.App.–Houston [1st Dist.] 1996, no writ).   

The abuse of discretion standard in a family law case overlaps the traditional sufficiency standard of review.  
See
 Crawford v. Hope, 898 S.W.2d 937, 940 (Tex.App.–Amarillo 1995, writ denied) (holding that under the abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in determining whether the trial court abused its discretion); 
see also
 Seidel v. Seidel, 10 S.W.3d 365, 368 (Tex.App.–Dallas 1999, no pet.); Doyle v. Doyle 955 S.W.2d 478, 479 (Tex.App.–Austin 1997, no pet.).  Thus, in applying the abuse of discretion standard, an appellate court must engage in a two-pronged inquiry: (1) whether the trial court had sufficient evidence upon which to exercise its discretion, and (2) whether the trial court erred in applying its discretion.  In re De La Pena, 999 S.W.2d 521, 525-26 (Tex.App.–El Paso 1999, no pet.).  The traditional sufficiency review applies in the first inquiry and then a determination must be made whether the trial court’s decision was neither arbitrary nor unreasonable.  
Id
.     

Findings of fact entered in a bench trial have the same force and dignity as a jury’s verdict.  In Interest of Striegler, 915 S.W.2d 629, 638 (Tex.App.–Amarillo 1996, writ denied); 
Seidel
, 10 S.W.3d at 368.  Thus, they are subject to legal and factual sufficiency challenges where there is a complete statement of facts in the record.  
Striegler
, 915 S.W.2d at 638.  In reviewing a legal sufficiency challenge, we must examine the record for any probative evidence which supports the finding while disregarding all evidence or reasonable inferences to the contrary.  Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).  A factual sufficiency challenge requires us to examine the record to determine if there is some probative evidence to support the finding, and then determine whether, in light of the entire record, the finding is manifestly unjust. Traylor v. Goulding, 497 S.W.2d 944, 945 (Tex. 1973); In re King’s Estate, 150 Tex. 662, 244 S.W.2d 660, 661-62 (1951). 

In determining conservatorship and possession issues, the best interest of the child shall always be the primary consideration.  Tex. Fam. Code Ann. § 153.002 (Vernon 1996).
(footnote: 2)  In addition, the trial court should also seek to implement the public policy of this State which is to:

(1) assure that children have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;

(2) provide a safe, stable, and nonviolent environment for the child; and

(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

§ 153.001(a) (Vernon Supp. 2002).  The burden of proof by the movant in a motion to modify the parent-child relationship is by a preponderance of the evidence.  § 105.005 (Vernon 1996).  A court may modify a joint managing conservatorship upon a showing of material or substantial change or that the order to be modified has become unworkable or inappropriate under existing circumstances, and that modification would be a positive improvement for and in the best interest of the child.  § 156.202 (Vernon 1996).
(footnote: 3)   

By her first, second, third, and fifth issues, Hylton asserts abuse of discretion by the trial court in imposing a domicile restriction on the children’s primary residence to the Fort Bend County area and challenges the legal and factual sufficiency of the evidence to support the following findings of fact:

18. The Court finds that in January 2001, [O’Brien] resigned from his employment in Melbourne, Florida and incorporated a business in Texas.

* * *

21. The Court finds that it is in the best interest of the children that their domicile be restricted to Fort Bend County, Texas or contiguous counties thereto, so long as [O’Brien’s] primary residence is Fort Bend County, Texas or contiguous counties thereto.

22. The Court finds that [O’Brien] has maintained frequent and consistent contact with the children since the date of divorce on May 5, 1997, in spite of the distance between [O’Brien’s] residence and that of the children.

23. The Court finds that based on the quality of the children’s relationship with their father, it is in the best interest of the children that their domicile be restricted to Fort Bend County, Texas or contiguous counties thereto.

24. The Court finds that if the children moved [sic] to Hawaii, their relationship with their father would be detrimentally impacted and possession and access would be practically nullified since there would be at least thirty-two hours of travel time during their periodic period of access with their father.

25.   The Court finds that the children’s intended move to Hawaii would not have been in their best interest in that their relationship and contact with their father would be severely impacted.

26. The Court finds it is in the best interest of the children that the domicile restriction imposed in the 
Order in Suit to Modify Parent-Child Relationship 
signed on March 13, 2001, be removed if [O’Brien] no longer primarily resides in Fort Bend County, Texas or contiguous counties thereto.

Evidentiary review in a relocation case is fact specific and each case must be evaluated on its own unique facts.  Confronted with a case of first impression, the Court analyzed relocation cases from other jurisdictions to develop guidelines for reviewing a modification order that removed a domicile restriction.  Lenz v. Lenz, 45 Tex. Sup. Ct. J. 781, 2002 LEXIS 75, at *10 (Tex. June 6, 2002).
(footnote: 4)  In conducting such a review, we must endeavor to give meaning to the public policy imperatives of section 153.001(a) of the Family Code keeping in mind that the primary consideration is the best interest of the children.  
Id
. at *9.  In discussing three cases, the Court considered the following factors:

∙ reasons for and against the move; education, health, and leisure opportunities; accommodation of special needs or talents of the children; effect on extended family relationships; effect on visitation and communication with the noncustodial parent; the noncustodial parent’s ability to relocate; Baures v. Lewis, 167 N.J. 91, 770 A.2d 214, 229-30 (N.J. 2001);

∙ parent’s good faith in requesting the move; continuation of a meaningful relationship with the noncustodial parent; economic, emotional, and education enhancement for the children and the custodial parent; effect on extended family relationships; Tropea v. Tropea, 87 N.Y.2d 727, 665 N.E.2d 145, 149-51, 642 N.Y.S.2d 575 (N.Y. 1996); and

∙ employment and education opportunities of the parents; the ages of the children; community ties; health and educational needs of the children; In re Marriage of Burgess, 13 Cal. 4th 25, 913 P.2d 473 (Cal. 1996).

As movant, O’Brien alleged a material and substantial change in circumstances, that the prior order had become unworkable or inappropriate because Hylton was planning to relocate to Hawaii, and that the requested modification would be in the best interest of the children.  We must decide whether O’Brien satisfied his burden by presenting some evidence of a substantive and probative character to support the trial court’s imposition of a domicile restriction.  While Texas has not addressed whether relocation, standing alone, qualifies as a material and substantial change in circumstances, where, as here, the custodial parent wishes to move a significant distance, a finding of changed circumstances may be appropriate.  Bates v. Tesar, 2002 Tex.App. LEXIS 4130, at *46  (Tex.App.–El Paso June 6, 2002, no pet. h.), citing Jaramillo v. Jaramillo, 113 N.M. 57, 823 P.2d 299 (1991).  Also, since the rendition of the Georgia order, O’Brien established that Hylton remarried and moved to Texas, his sons have two half sisters, and a move to Hawaii would make their custody arrangement unworkable or inappropriate.

It is undisputed that Hylton is a full time caregiver to her sons and that she is completely devoted to their needs.  O’Brien shares a close relationship with his sons and he has regularly exercised his periods of possession and access.  O’Brien explained that any missed visitation was work-related.  Neither the education nor the physical health of the children is at issue.  Hylton acknowledged at trial that a move to Hawaii would impact the relationship O’Brien has with his sons and that O’Brien and his youngest son share a strong bond.  Before the modification proceeding, Hylton and O’Brien enjoyed a harmonious relationship for divorced parents and were able to work through any difficulties.

O’Brien resigned his position in Florida effective at the end of February 2001, and then  filed Articles of Incorporation in Texas for Strategic Health Associates, Inc.   In March 2001, he obtained a Texas driving permit.  Once settled in Texas, O’Brien enjoyed more frequent and consistent contact with his children.  However, he testified that if the domicile restriction was lifted and Hylton moved to Hawaii, he would relocate to Florida because he would have no reason to stay in Texas.  O’Brien considered a parallel move to Hawaii and contacted a headhunter and searched through a Society of Actuary membership book for possible employment opportunities, but was unable to find a health actuary position.

O’Brien presented evidence that during a typical three-day weekend, one-way flight travel from Hawaii to Florida would take ten hours and thirty-nine minutes plus driving time.  Assuming no delays or cancellations, O’Brien estimated that he would share only 36 hours with his sons, including time for sleeping.  Due to the time difference O’Brien anticipated that the boys would be tired and probably sleep during his waking hours.  Due to the expense of airline travel, his sons usually travel standby unaccompanied by an adult for a reduced fare available through Hylton’s husband’s employment.  The evidence established that from where Hylton would reside in Hawaii, there was only one flight to Houston per day with no guarantee of a seat or connection in Houston to Florida when flying standby.  Hylton conceded that regardless of whether the boys or O’Brien traveled, it would be “very straining,” and a missed flight would make it impossible to have meaningful visitation. 

O’Brien also expressed concern about the stability of Hylton’s marriage.  Hylton testified that in April 1999, she discovered that her husband had committed an indiscretion with another woman and informed O’Brien that she was having marital problems.  However, according to Hylton, she and her husband sought counseling and renewed their wedding vows in May 2000.  She testified that they are dedicated to a strong, positive household.  

The evidence established that the boys have had nine residences in eight years, with their home in Texas for three years being the longest period of residency.  Both sets of grandparents have homes in Florida and O’Brien’s mother cares for the boys during summer visitation periods.  Hylton’s sister and the boys’ cousins reside in San Antonio and visit every two to three months.  Hylton’s husband’s parents live in Harris County and visit twice a month.  No one involved in this litigation has any friends or family in Hawaii.  

O’Brien testified that his primary concern should the boys move to Hawaii is that he will be “phased out” of their lives due to a lack of meaningful and frequent contact.  Although Hylton testified that frequent contact could be maintained by regularly scheduled telephone calls, videos, and e-mails in addition to visitation, O’Brien claimed that there is no substitute for face-to-face contact and that Hylton’s suggestions do not encourage “real communication.”  O’Brien also expressed concern that because of the time difference,
(footnote: 5) there could be no assurance of frequent contact especially by telephone.  Summer and holiday visitation time would not be frequent enough to maintain the type of relationship he currently enjoys.  Additionally, O’Brien testified that the time difference would make it difficult for he and Hylton to effectively co-parent their children.  

Hylton presented expert testimony from Barbara Candley, a psychologist who met with the younger son five times and with the older son three times.   The younger son was treated for depression in 1999.  After treatment and medication, he showed improvement.  According to Candley, the younger son is very fragile and vulnerable and might not be able to cope with a move, but for his mother’s devotion.  On cross-examination by the ad litem, Candley admitted that O’Brien shares a positive relationship with his sons and that his younger son will need consistent contact for reassurance.  The older child is confident, emotionally strong, and desires to move to Hawaii. 

Hylton’s husband works in aircraft acquisitions and market planning.  He resigned his position with Continental Airlines in Houston for an increase in pay of $50,000 and a relocation bonus of $20,000.  He moved to Hawaii and began his new job in August 2000.  On November 27, 2000, the Hyltons executed a contract of sale and deposited $5,000 on a house in Hawaii.  Hylton testified that the benefits of moving to Hawaii included financial stability, a nice home, a smaller city with less pollution, travel adventures for the family to places like Seattle, Tahiti, Guam, and China, and a less demanding job for her husband.  However, she testified that if a domicile restriction was imposed, her husband would return to Texas, but would probably experience difficulty in seeking employment.  She feared financial devastation because the $20,000 relocation bonus would have to be returned.  Additionally, her husband’s occupation requires that he work where an airline is based, and Continental being the only Houston-based airline, she was not optimistic that he would be rehired.  She noted that the next closest city where he could seek employment would be Dallas.      

In considering whether the court’s imposition of a domicile restriction to the Fort Bend County area was proper, in addition to the public policy of this State, we also apply the 
Holley
 factors–a non-exhaustive list of considerations for determining the best interest of the children.  Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).  Those factors include the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the individuals involved, the programs available to those individuals to promote the best interest of the children, the plans for the children by these individuals, the stability of the home, the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper, and any excuse for the acts or omissions of the parent.  
Id.

Closely scrutinized, the reasons for moving to Hawaii include financial stability, travel and leisure opportunities, the desire of the older son, and the stability of the post-divorce family unit.  However, the best interests of the children and the public policy of this State are served if O’Brien is permitted to maintain meaningful frequent and continuing contact and is able to share in the rights and duties of raising his children in a stable environment.  § 153.001(a).  O’Brien met his burden and established that the domicile restriction is a positive improvement and in the best interest of the children for reasons such as continuing close contact with his children, promoting relationships with grandparents and relatives, a stable environment after nine residence changes, and fostering the younger child’s emotional and mental well-being.  Hylton’s financial considerations for moving to Hawaii are outweighed by the needs of the children to have frequent and continuing contact with their father.  
Bates
, 2002 Tex.App. LEXIS 4130, at *49.  The evidence presented by O’Brien was of substantive and probative character upon which the trial court was able to exercise its discretion, and thus, we cannot conclude that the trial court misapplied its discretion.  Thus, there being some evidence to support the trial court’s findings and its order restricting the domicile of the children to the Fort Bend County area, we conclude that Hylton has not established a clear abuse of discretion by the trial court.  Issues one, two, three, and five are overruled. 

By her fourth issue, Hylton contends that the imposition of a domicile restriction infringes on her constitutional right to travel and to equal protection of the law.  We disagree.  The right to travel encompasses three different components: (1) the right to enter and leave another State; (2) the right to be treated as a welcome visitor while temporarily present in another State; and (3) for those travelers who elect to become permanent residents, the right to be treated like citizens of that State.  Saenz v. Roe, 526 U.S. 489, 490, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).  The domicile restriction imposed by the trial court applied only to the children and did not affect Hylton’s ability to exercise any of the aforementioned rights.  Also, the contention that a domicile restriction infringes on a parent’s constitutional right to travel was rejected by two of our sister courts in Bates v. Tesar, 2002 Tex.App. LEXIS 4130  (Tex.App.–El Paso June 6, 2002, no pet. h.), and Lenz v. Lenz, 40 S.W.3d 111, 118 n.3 (Tex.App.–San Antonio 2000), 
rev’d on other grounds
, 45 Tex. Sup. Ct. J. 781, 2002 LEXIS 75 (Tex. June 6, 2002).  In 
Bates
, citing 
Lenz
, the court held that the mother’s constitutional right to travel was not violated by the trial court’s order requiring the children to relocate back to where their father resided because the benefits in removing the children to reside with their mother was outweighed by the importance of having continued contact with their father.  
See
 
also
 § 153.001(a)(1) (Vernon Supp. 2002) (providing that the public policy of this State is to assure that children will have frequent and continuing contact with parents who have shown the ability to act in their best interest).  Thus, weighing the benefits of relocating the children to Hawaii against the importance of having continued contact with their father, we find that the domicile restriction imposed by the trial court did not violate Hylton’s constitutional right to travel.  A review of the record demonstrates that Hylton apprised the trial court of the infringement of her constitutional right to travel in her objections to the judgment; however, she did not raise her equal protection contention below.  Thus, she has waived that portion of her issue on appeal.  Hollified v.  Hollified, 925 S.W.2d 153, 156-57 (Tex.App.–Austin 1996, no writ).  Issue four is overruled.

By her seventh issue, Hylton contends the trial court erred in failing to award her attorney’s fees.  We disagree.  An award of attorney’s fees in a suit affecting the parent- child relationship is discretionary with the trial court.  § 106.002 (Vernon Supp. 2002); 
see also
 Bruni v. Bruni, 924 S.W.2d 366, 368 (Tex. 1996).  The trial court’s order provides:

IT IS ORDERED that each party shall be responsible for his or her own attorney’s fees incurred as a result of legal representation in this case.

IT IS FURTHER ORDERED that each party shall pay fifty percent (50%) of attorney fees owed to Sally Brown as a result of her representation in this case as Guardian Ad Litem for the children upon presentation of her itemized statements.

Both parties in the underlying suit sought affirmative relief from the trial court.  O’Brien filed his motion seeking to modify the terms and conditions for access to or possession of the children and for imposition of a domicile restriction.  He later amended his motion and requested that he be appointed primary joint managing conservator.  Hylton filed her counter-petition seeking to have child support increased.  O’Brien was successful in having the trial court impose a domicile restriction and Hylton was successful in having the amount of child support increased.  Thus, we find the trial court did not abuse its discretion in requiring each party to be responsible for their own attorney’s fees and for fifty percent of the guardian ad litem’s fees.  Issue seven is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis

         Justice

Quinn, J., concurring.

Publish.

FOOTNOTES
1:
1 
Further reference to Texas Rules of Appellate Procedure will be by reference to “TRAP __.”

2:
3:
1 
Further reference to Texas Rules of Appellate Procedure will be by reference to “TRAP __.”

4:
5: